58 413
3ap161
58b 413
61ad 91

## WAFFLE vs. THE NEW YORK CENTRAL RAILROAD COMPANY.

Every person has the right to drain the surface water from his own land, to render it more wholesome, useful or productive, or even to gratify his taste or will; and if another is inconvenienced, or incidentally injured, thereby, he cannot complain.

No one can divert a natural water course and stream, through his land, to the injury of another, with impunity; nor can he, by means of drains or ditches, throw the surface water from his own land upon the land of another, to the injury of such other.

But where a person can drain his own land without turning the water upon the land of another, or where it can be done by drains emptying into a natural stream and water course, there can be no doubt of his right thus to drain, even though the effect may be to increase the volume of water unusually, at one season of the year, or to diminish the supply at another.

No one can be required to suffer his land to be used as a reservoir, or water-table, for the convenience or advantage of others.

The owner of land through which a stream flows may increase the volume of water by draining into it, without any liability to damages by a lower owner. He must abide the contingency of increase or diminution of the flow in the channel of the stream, because the upper owner has the right to all the advantages of drainage or irrigation, reasonably used, which the stream may give him.

The plaintiff owned a saw-mill, upon a small stream nearly two miles below the point where the defendant's road crossed such stream. At that point, the land was naturally low and marshy, and the defendant, in constructing its road, raised the bed thereof above the natural surface of the land, by excavations on each side, leaving ditches, by means of which the surface water was drawn off and passed into this stream, on each side of the road-bed, where the stream was crossed by the road. Such ditches were wholly upon the defendant's land, and conducted the surface water into the stream upon its own land. The complaint alleged, and the testimony tended to prove, that by means of these ditches the water from such low land was drawn off and led into the stream so rapidly that in times of flood and high water, it filled the plaintiff's pond so full that he could not use the same, but was compelled to open his gates and let the water flow through; and that in a dry season the supply of water in the stream was, by the same means earlier exhausted, and the plaintiff's mill thereby compelled to lie idle and unemployed, for want of water, for a much longer period than formerly. *Held* that these facts constituted no cause of action; and that the plaintiff was properly nonsuited.

MOTION by the plaintiff, for a new trial, upon a case and exceptions.

The action was brought to recover damages for an

alleged disturbance of certain water rights of the plaintiff. The complaint alleged that the plaintiff owned a saw-mill on Little Black Creek, in the town of Gates, in the county of Monroe, and that the defendant interfered with and diverted the water of the stream from its course, by unlawfully making two ditches, one on each side of its track, by means of which the water was diverted from the mill. The complaint then proceeds to allege that in times of high water these ditches bring the water in immense quantities into the plaintiff's mill pond, so as to flood, impede and destroy the operation of the mill for many months in the year, and that by means of these ditches the natural reservoirs upon the lands surrounding, and in the vicinity of the railroad above and around the mill, are so drained that in dry times there is no water to run the mill. Then follows the general allegation that by means of these ditches the defendant "wrongfully, injuriously and unlawfully stopped, prevented, hindered and diverted, and turned and changed the waters and the running and flow thereof of the said streams or water courses from passing, running or flowing along these heretofore usual and natural courses to the said saw-mill works    *    *    *    as the same heretofore did do."

The answer denied each and every allegation contained in the complaint; set up the statute of limitations; and alleged that at the time of the making of the two artificial channels referred to in the complaint, the defendant was, and ever since had been the owner and operator of a railroad which passes through lands in the vicinity of the lands of the plaintiff, mentioned in the complaint; that the artificial channels referred to in the complaint, are upon the land and along side of the track of the defendant's said railroad; that the same were and are necessary to the proper construction and maintenance of said track, and for the safety thereof, and the trains passing over the same; that in the making and maintenance of said artifi-

cial channels, no water was or is diverted from the stream, the waters whereof pass through or upon the lands of the plaintiff.

The issue thus joined came on to be tried at a circuit held at Rochester, in January, 1870, by a justice of this court and a jury.

It appeared in evidence that the plaintiff's mill was about two miles below the point where the two artificial ditches in question enter the creek; that the defendant's road crosses no part of the plaintiff's land; that the creek supplying the plaintiff's mill crosses the defendant's road but once, and that at Cold Water station; and that the ditches enter the stream of the culvert by that station, and are close to the work, and within the defendant's land.

It was claimed by the defendant that it was clearly established that the ditches were entirely on the defendant's land; that they carried to the creek surface water that naturally went there; and that farmers had used these ditches as a means of getting rid of surface water as rapidly as possible.

When the plaintiff rested, the defendant moved that the plaintiff be nonsuited, upon the following grounds:

*First.* That it appeared in evidence that the defendant had been in the possession and ownership of the land, through which these artificial ditches run, for a period of more than twenty years preceding the commencement of the action; and that the ditches had been constructed upon the defendant's land for a longer period than twenty years before the commencement of the action. And that, therefore, there was a presumption of a grant to the defendant, with the right to make and maintain the same.

*Second.* That it appeared that the ditches were constructed upon the land of the defendant exclusively, and that they discharged the waters into the creek, upon which the plaintiff's saw-mill was situated, and it appearing that the waters so discharged into the creek were only surface

waters, the defendant had the right to make and maintain the ditches, and so discharge the surface waters, and that the plaintiff was not entitled to recover damages on account of it.

*Third.* That there was no allegation in the complaint, and this action did not proceed upon the ground, that the defendant had been guilty of any negligence in the construction of its road or in the making of these ditches.

*Fourth.* That the defendant, as a necessary incident, had the right to make and maintain these ditches for the purpose of operating its road, and there being no allegation of negligence in construction and maintenance of the same, the plaintiff could not recover.

The court granted the motion, and the plaintiff, by his counsel, excepted. The court thereupon also ordered that the plaintiff have liberty to make a case containing exceptions, on which to move for a new trial, and that the same be heard in the first instance at the general term, and that in the meantime and until the decision of the general term, all further proceedings on the part of the defendant be stayed.

*Geo. E. Ripsom,* for the plaintiff.

I. The stream in question was not the defendant's premises, and it had no right to divert it, nor change the usual flow of the waters, either by diminution or increase; but was bound, under the statute, to leave and keep the stream in its natural and usual channel, without affecting the volume of the water. (3 *R. S.* 617, § 28, *subd. 5, Edm. ed.*) From the evidence, it appears that this stream had been used in a particular manner, before and since 1839, by which use the plaintiff had acquired the right to so continue its use, unless he should lose it by his acts. These channels were not completed until 1854, and were not put down until 1848 or 1849, from which time, (says the plaintiff,) "they commenced doing me damage;" and this action was commenced in 1867. So that, as the proof stands, the

defendant is not in a position to claim the right to maintain these channels by prescription.

II. The proofs made are convincing to the mind that the habit of the stream, by reason of the channels in question, had undergone a marked change, and one, too, detrimental to the plaintiff. The question of negligence in their construction or maintenance does not arise. (*Robinson* v. *N. Y. and Erie R. R. Co.*, 27 *Barb.* 512, 522.  2 *Kern.* 486.) But the question of fact was tendered under the statute, whether the defendant had restored—preserved the stream or water course along which its road was built to its former state, or to such state as not unnecessarily to have impaired its usefulness. And also the further question of fact, whether there was a change in the flow of the stream, and whether that change was attributable solely to the existence and action of these two channels. The consideration of which would embrace, whether a few private ditches leading from a few farms into these channels, would or did produce the same effect as if they had been led into the stream from each farm, and whether it was the waters from these farmers' ditches, or the two channels, that did the mischief. As to the farmers' ditches, what was the peculiar formation of the soil and land, and whether in the natural course of things they would have been led into the stream, or how otherwise; and if led into the stream, what the effect would have been. When the farm ditches were put down does not appear, and the reason of the increase of water and damage for the ten odd years, is probably due to the fact that when the defendants completed these channels, they cut them through these ridges, (which turned the waters in the hollow into the stream,) and brought waters from a point and territory which, before that, flowed in an opposite direction, possibly into the head waters of this stream, and if so, were longer in their approach to the plaintiff's mill. But this stream was the natural channel

to ditch into to drain the lands, and the defendant, if it permits the use to be made of its channels as appears in the case, must be held responsible for the result.

III. The waters were not mere surface waters; and if they were, the plaintiff having acquired the right to have the waters of the stream above him flow to him in their usual and natural way, the defendant, or any other person or persons, has not the right, it is submitted, to change that habit or custom. And if the defendant, by drainage of surface waters over a large tract of territory, collects the waters in one body and throws them into the stream in a body at a single point, which impairs the use of the stream materially, it is submitted that an action will lie.

IV. The following authorities are referred to as bearing upon all of the foregoing propositions: *Belknap* v. *Trimble*, (3 *Paige*, 577, 605;) *Haight* v. *Price*, (21 *N. Y.* 241;) and at page 247 the court says: "The plaintiff had a right to have the whole stream pass that point of its course in its natural bed," &c. And this is what the plaintiff contends for here. (*Bellinger* v. *N. C. R. R. Co.*, 23 *N. Y.* 42. *Cott* v. *The Lewiston R. R. Co.*, 36 *id.* 214. *Pixley* v. *Clark*, 35 *id.* 520.) "If the face of the country is such that it necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to one common reservoir, if such water is regularly discharged through a well defined channel which the flow of water has made for itself, and which is the accustomed channel through which it flows and has flowed from time immemorial, such channel is an ancient natural water course." (*Earl* v. *De Hart*, 1 *Beasley*, 180, 283, 284.) "The right of every owner of land, through which a stream of water flows, to the use and employment of the water, to have the same flow in its natural and accustomed course without obstruction, diversion or corruption, extends to the quality as well as to the quantity of the water. (*Halsman*

v. *Boiling Springs Bleaching Co.*, 1 *McCarter*, 335, 342.) The cases of *Kauffman* v. *Griesimer*, (26 *Penn.* 407,) and *Martin* v. *Riddle*, (*Id.* 415,) with some others, illustrate the principles of law in reference to the right of drainage in the interest of agriculture, and improvements of land, and are worthy of particular consideration. The first case was that of natural drainage. The court says: " One has no right to alter the natural drainage so as to throw upon his neighbor, waters that he had not received before ; one may drain his land as advantageously to himself as possible, but he must not acquire that advantage at the expense of his neighbor ; the defendant could have no right to prevent the waters of floods and freshets flowing where they were accustomed to flow ; it was the plaintiff's right that such water should flow there, and indeed all the water that had been accustomed to flow there. These cases ( *Williams* v. *Gale*, 3 *H. & John.* 231, and *Martin* v. *Riddle*,) recognized the principle that the superior owner may improve his lands by throwing increased waters on his inferior, through the natural and customary channels, which is a most important principle, not only to agricultural but to mining operations also ; the principle therefore is to be maintained, but it should be prudently applied ; this principle was greatly misapplied by the plaintiffs when they supposed they might not only increase the ordinary flow, but might dig a new channel for it, to and into the defendant's land ; the only servitude the plaintiff could claim in the defendant's land was that it should receive the overflow which was natural and customary." (*Potter* v. *Peck*, 16 *Ohio*, 334. *Martin* v. *Sett*, 12 *Ala.* 501.) In *Martin* v. *Riddle*, it appeared that there was on the defendant's land a natural channel through which the falling water and some living springs were naturally discharged from the land of the plaintiff and others. The court says: "I shall speak now of the general principle of the law, in the matter of rain

water and drainage, of the respective rights and duties of adjoining proprietors in relation thereto. They are, in general, the same as in the case of running water—they follow nature ; nor has the owner of the upper ground a right to make any excavations or drainage by which the flow of water is diverted from its natural channel, nor can he collect into one channel waters usually flowing off into his neighbors' fields by small channels, and thus increase the waters upon the lower fields. If it be difficult to ascertain from the character of the surface what is the natural channel, then the course in which the water has long been peaceably and openly permitted to run, will be considered as having a legitimate origin. If the owner of the upper ground wrongfully divert an unnatural quantity of water upon the ground of a lower neighbor, by collecting small streams together and discharging them at one place, or by any other means, the neighbor below may have an action against him. When there is a natural channel or hollow for discharging the flow of water, it must be suffered to remain until altered by agreement of those concerned." In *Dickinson* v. *Worcester*, (7 *Allen,* 19, 22,) the court says : " But one proprietor of land has no right to cause a flow of the surface water from his own land over that of his neighbor, by collecting it into drains or culverts or artificial channels ; he cannot thus, by his own aid merely, connect a flow of surface water into a stream passing from his own over his neighbor's land, with all the legal incidents of a natural water course." In *Brand* v. *Murphy,* (37 *Vt.* 99,) the court says : " That if the surface water naturally falling upon the plaintiff's land would run off upon the defendant's land, the defendant had no right to prevent its continuing to do so."

V. The defendant not only extended these two channels a great distance, but they cut them through natural barriers—viz., these ridges—and by so doing collected the waters from this territory and brought them down

Waffle *v.* New York Central Railroad Company.

into the stream at one place, and there discharged them upon the plaintiff in an unnatural and unaccustomed manner.

VI. There was a mistrial, and a new trial should be ordered for that reason. (*Hoagland* v. *Miller*, 16 *Abb.* 103. *Lake* v. *Artisans' Bank*, 17 *id.* 232. *Cobb* v. *Cornish*, 16 *N. Y.* 602, 604.)

*Edw. Harris*, for defendant.

The nonsuit was properly granted, upon the grounds stated in the application therefor. (*Angell on Water Courses*, § 108 *and cases cited ;* § 108, *a, b, c, s. Rawstron* v. *Taylor*, 11 *Exch.* 369. *Goodale* v. *Tuttle*, 29 *N. Y.* 467. *Lampman* v. *Milks*, 21 *id.* 505 *to* 507.)

*By the Court*, Johnson, J. There is no dispute about the facts in this case. The plaintiff's saw-mill is upon a small stream, nearly two miles below the point where the defendant's road crosses such stream. At that point the land is naturally low and marshy, and the defendants, in constructing their road, raised the bed thereof above the natural surface of the land, by excavations on each side, which made ditches, by means of which the surface water of this low, marshy land, was for a considerable distance drawn off, and passed into this stream on each side of the road bed, where the stream is crossed by the road. These ditches are wholly upon the defendants' land, and conduct the surface water into this stream upon their own land. The only cause of action stated in the complaint is, in substance, that by means of these ditches, the water from this low land is drawn off and conveyed into this stream more rapidly than it would be otherwise; and in the wet season, and in times of flood and high water, filled the stream and the plaintiff's pond so full, and increased the volume of water to such an extent, that he could not use the same, but was compelled to open his gates and let the

water flow without using the same; and that as the dry season came on, the water was by the same means drawn off so rapidly from these low, wet grounds, that the stream did not keep up as it did before, and the supply which said stream was accustomed to receive, gradually, from from such wet lands, was earlier exhausted, and the plaintiff's mill thereby was compelled to lie idle and unemployed for want of water, for a much longer period than formerly, and a much longer period than it would, had these drains not been made. The testimony tended to sustain these allegations in the complaint. It appeared from the evidence, that there was no natural outlet or water course from this low wet land into the creek, but a gentle and gradual inclination of the surface for a long distance towards the stream. The defendants' ditches extended through these lands for a distance of over two miles; and it appears that the owners of the lands along this distance, adjacent to the railway, have availed themselves of the defendants ditches, and drained the surface water from their lands, by means of ditches through the same, emptying into the defendants' ditches. By these means the surface water is discharged from these wet lands, and the same are rendered tillable and productive, instead of remaining waste lands, and serving as a mere reservoir to hold water for the use of the plaintiff's mill, for a few more days or weeks each summer.

It is entirely clear that these facts constitute no cause of action. Every person has the unquestionable right to drain the surface water from his own land, to render it more wholesome, useful or productive, or even to gratify his taste or will; and if another is inconvenienced, or incidently injured thereby, he cannot complain. No one can divert a natural water course and stream, through his land, to the injury of another, with impunity; nor can he by means of drains or ditches, throw the surface water

Waffle *v.* New York Central Railroad Company.

from his own land upon the land of another, to the injury of such other. But where a person can drain his own land without turning the water upon the land of another, or where it can be done by drains emptying into a natural stream and water course, there can be no doubt of his right thus to drain, even though the effect may be to increase the volume of water unusually, at one season of the year, or to diminish the supply at another.

No one can be required to suffer his land to be used as a reservoir or water-table for the convenience or advantage of others. This principle is laid down by all the judges, in *Rawstron* v. *Taylor,* (11 *Exch.* 369.) It is also recognized as the true rule by Denio, Ch. J., in *Goodale* v. *Tuttle,* (29 *N. Y.* 459,) at page 467, where he says: " In respect to the running off of surface water caused by rain or snow, I know of no principle which will prevent the owner of land from filling up the wet and marshy places on his own soil, for its amelioration and his own advantage, because his neighbor's land is so situated as to be incommoded by it. Such a doctrine would militate against the well settled rule that the owner of land has full dominion over the whole space above and below the surface." In *Miller* v. *Loubach,* (47 *Penn.* 154,) Thompson, J., in delivering the opinion of the court, says: " No doubt the owner of land through which a stream flows may increase the volume of water by draining into it, without any liability to damages by a lower owner. He must abide the contingency of increase or diminution of the flow in the channel of the stream, because the upper owner has the right to all the advantages of drainage or irrigation, reasonably used, which the stream may give him." This rule commends itself to general acceptance, by its sound sense, and easy adaptability to the common wants, interests and necessities of adjacent owners of lands. (*See also Kauffman* v. *Greisemer,* 26 *Penn.* 407; *Martin* v. *Riddle, Id.* 415, *note;*

*Williams* v. *Gale*, 3 *H. & J.* 231; *Angell on Water Courses, 6th ed.*, §§ 108 *a* to 108 *s* ;) where the whole doctrine of drainage is examined and treated.

The plaintiff was therefore properly nonsuited, and a new trial must be denied.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 14, 1870. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]