## J. O. DAVIS *et al. vs.* AFONG.

### APPEAL FROM WATER COMMISSIONERS.

### OCTOBER TERM, 1884.

### JUDD, C. J.; McCULLY and AUSTIN, JJ.

Commissioners of Private Ways and Water Rights are not authorized to award damages for wrongful diversion of water; but they have authority to make such orders as may be legitimate and necessary to the effectual enforcement of their judgment.

They have authority to direct the removal of dams and other obstructions of water courses.

On appeals from the decision of the Commissioners, new evidence may be introduced. Such new evidence is not confined to newly-discovered evidence, nor to the evidenc of fresh witnesses.

By the rules of ancient Hawaiian agriculture, the taro patches of the konohiki are entitled to water from springs on the land.

### OPINION OF THE COURT, BY JUDD, C. J.

This is a case appealed from the Commissioners of Private Ways and Water Rights of the District of Waialua, Oahu.

Counsel for the defendant moved to dismiss the appeal for want of jurisdiction in the Commissioners upon the case stated by the record and the judgment thereon. The Court overruled the motion upon the following considerations:

By the record it appears that the defendant was duly sum-

moned before the Commissioners "to answer to the demand or complaint 'Koi,' of J. O. Davis and other plaintiffs named, that the said Afong had wrongfully taken the water of the springs of 'Kalie' and 'Pahukii,' to the injury and damage of the water rights of the plaintiffs at 'Paukauwila,' and on the lands adjoining at Kamooloa on the north."

The sole provision for the jurisdiction of the Commissioners is found in Section 997 of the Code, as amended by Act of 1860, which reads thus: "It shall be the duty of such Commissioners to hear and determine all controversies respecting rights of way and rights of water between private individuals, or between private individuals and the Government," and in Section 998, as amended by Chapter 19 of 1878, that "In settling such controversies, the Commissioners shall give such decision as may in each particular case appear to them to be just and equitable between the parties interested."

The defendant coming in on the summons and joining issue on the claim of plaintiffs, there was clearly a "controversy" of the subject matter within the jurisdiction of these Commissioners. This Court, in a recent case not reported, dismissed a case for want of jurisdiction, when it appeared that one Ahuna applied to the Commissioners to determine his water rights, without setting forth a claim as against other parties, and the Commissioners proceeded to adjudicate upon his rights of water, without making other persons, whose rights were claimed to be affected, parties to the adjudication. The decision was merely a declaration or exposition of the plaintiffs' right to certain water, made *ex parte*, and no opportunity to be heard was afforded those who claimed that their rights were affected by the plaintiffs' claims. We held that, as the record failed to disclose any "controversy" between plaintiff and other parties, the Commissioners were without jurisdiction.

The Commissioners, it is conceded, are not authorized to award damages for wrongful diversion of water. Such a matter should be the subject of a civil action in the proper Court.

But it is claimed by defendant's counsel that the Commissioners have not jurisdiction to order obstructions to water channels

removed, as dams, troughs or drains, or to order banks of water courses restored, or to forbid the erection of obstructions, and, in short, to exercise the functions of a Court of Equity, applicable to the subject matter.

The counsel claim that the Commissioners have jurisdiction only to declare what the respective rights of the parties are, and to prescribe the times of use of the water to each claimant, or the distributive share of the same, and the rights being settled, equity must be resorted to, in order to protect the enjoyment of the right or to redress infringements upon it.

We do not think the Legislature intended any such limitation of the jurisdiction of the Commissioners. They are authorized, as we have seen, to render such decision as may in each particular case appear to them to be just and equitable between the parties interested, and they "have the like power to administer oaths, to punish contempts, and grant adjournments, to subpœna and compel the attendance of witnesses, to enforce judgments and issue execution for costs, as conferred by law on Police Courts." Compiled Laws, p. 296.

We construe this as giving the authority to the Commissioners to make such orders as may be legitimate and necessary to the effectual enforcement of their judgment. We think the Legislature did not intend to compel parties to establish their rights in one forum and oblige them to resort to another forum to have these rights enforced or protected. The very object of a special Court of Commissioners in each election district, supposed to possess special knowledge for this purpose, to settle controversies respecting rights of way and water rights, was to create a forum for the complete adjudication of such matters, subject to appeal. This Commission cannot, of course, create new privileges, nor apportion and distribute water arbitrarily without reference to its title.

A controversy must appear. It is difficult to know how a controversy could be occasioned except by one party taking more than his accustomed supply of water, and to accomplish this by building dams or increasing the size of old dams, or increasing ditches, or doing some act which must be stopped, in order to restore matters to the condition they were in when the acts com-

plained of were done, if the acts complained of should be found to be in contravention of the plaintiffs' right.

On reference to the numerous cases decided by this Court on appeal, it will be seen that many questions, as to the removal of dams and other obstructions, have been passed upon by the Court.

The counsel for defendant objected to the introduction, on appeal, of the evidence of witnesses who testified before the Commissioners. The statute, p. 295, Compiled Laws, prescribes that "the Circuit Court or Supreme Court shall hear and determine the case in Banco, and allow the introduction of new evidence."

This is far different from the language used in appeals from the Commissioners of Boundaries, which prescribes that the record of the Commissioners be read in evidence, "and the Court shall allow the introduction of the evidence of witnesses whose testimony is not on record, but not otherwise." Compiled Laws, p. 530. It also differs from the statute concerning appeals to the Full Court from the decision of a single Justice thereof. There the law reads that "no new evidence shall be introduced in the Court above; provided, always, that the Court above may, in case evidence is offered which is clearly newly discovered evidence, and material to the just decision of the appeal, admit the same." Compiled Laws, p. 244.

On the appeals from Commissioners of Private Ways and Water Rights, "new evidence" may be introduced. We do not consider this to be limited to newly-discovered evidence. Nor can it be confined to the evidence of fresh witnesses. We adopt a more liberal view, and allow the testimony of either new witnesses *i. e.* (those not examined in the Court below), or of witnesses examined below, if their evidence shall be new, and not a mere repetition of what was said and recorded below.

We come now to the points presented by this appeal on the evidence.

The defendant holds, as lessee or otherwise, certain parcels of land in Waialua, Oahu, upon which are several springs, called Pahukii nui, Pahukii iki, Lehua and Kalia, and other springs not named. The water comes to the surface, and makes something of a pond surrounding each spring. The water flows from one

spring or pond to another, and supplies water to many parcels or patches of land adjacent, divided by banks or kuaunas, formerly cultivated in kalo, but now mainly in rice. The water from Pahukii iki flows into the Kalia spring. From this largest pond or loko, the Kalia spring, there is an ancient ditch or auwai leading thence and passing alongside of the Pahukii nui spring; the auwai receives from it a supply of water through an opening in its banks. Further along the auwai receives another augmentation of its supply of water from the Lehua spring, after having passed through several kalo or rice patches. Thence the ditch is continued until it reaches the lands owned by the plaintiffs, and supplies them with water. On the lower and makai side of this main auwai, *i. e.*, between the auwai and the river, are many patches, formerly planted in kalo, but which are now planted in rice by defendant.

We think it is well established by the testimony that the plaintiffs have used the water for a period much over twenty years, distributing it among themselves according to well-settled times of use. For instance, the plaintiff, Davis, has the water on his lands (which he got by deed from King Kamehameha III. in 1851,) for sixty hours each week. There is no controversy between the plaintiffs. They make common cause against the defendant, who is the representative of a Chinese Company engaged in rice culture, and complain that he has wrongfully diminished the supply of water accustomed to flow in the main auwai, to their injury. That he has done this by placing two wooden troughs or drains under and across the main auwai, ostensibly for the purpose of draining the water from the rice land on the upper side of the auwai. The water that flows through one of these drains goes into the rice land of the defendant on the lower or river side of the auwai, and there is testimony that much water thus finds its way to the river and is lost.

The plaintiffs also complain that the defendant takes the water from Pahukii iki to other lands of his by a rotary screw, which thus prevents the water from flowing into the Kalia pond.

Another complaint of the plaintiffs is that the defendant has cut and trimmed the banks of the main auwai, so that whereas

formerly its width averaged three feet, it is now only a foot and a half and eight inches wide in places.

Many witnesses testify to the diminution of water by reason of defendant's acts, and Davis says the supply of water to the lands of the plaintiffs is reduced, so that whereas formerly a trough eight inches broad by six inches high would not carry off all the water, now a trough four inches wide by two inches high is sufficient.

The plaintiffs contend that, by the evidence, the patches adjacent to the springs, now held by defendant, are not entitled to water as of a right obtained by prescription. The evidence is that these patches, when cultivated in kalo, were accustomed from ancient times to be filled with water, as they needed it, directly from the main auwai, through openings made in the banks. When one patch was full, the water was made to flow into the patch next below it until this was full, and when all were full, the water would be stopped off from the main auwai, by filling the cut or opening with sods or stones. The argument is made that as these patches had no regular days allotted in which they received their water supply, but took it as they needed it, and as some of the witnesses say "furtively," no right by prescription was thus acquired.

But a large number of these patches belonged to the konohiki, or general land owner, in whose land some of these springs which supply the water are situated.

By the rules of ancient Hawaiian agriculture the konohiki patches would be entitled to water. And it is a general principle, and not disputed, that a land-owner is entitled to the use of the water originating upon his land, subject only to the rights which others may acquire by prescription. As to the patches of land in the immediate proximity of the springs not owned by the konohiki, but granted as kuleanas and now in possession of the defendant, we are of the opinion that rights of water can be acquired for them by a sufficiently long and adverse open use of such water as may be required for the cultivation of the crop, though the water be not taken during stated periods of time. But the konohiki, or owner of the lands in which these springs

are, can use as he pleases whatever water from them has not been acquired by adverse use by others.

The plaintiffs contend that they are entitled by adverse possession to the use of the auwai full of water leading from the springs. The defendant's counsel contend that "in regard to the water pumped from the defendant's lots above the ditch into either of his lots there, he has a right so to do, it being water arising from a spring upon his own land; and that by the same right they were authorized in drawing off the Pahukii water to other land of their own." The Pahukii land being lower than the auwai, it is certain that water could and can reach the auwai in no other way than by being allowed to collect on the Pahukii lots until it overflows the banks of the auwai, and also by its flowing, either as surface water or by subterranean percolation from the Pahukii spring into the lower Kalia spring. That the plaintiffs have no right to such overflow, involving as it does the necessity of keeping their land in such a condition that the water would overflow its bounds, and no right to the accretion to Kalia spring water from surface water or by subterranean percolation from the Pahukii spring: citing the below mentioned authorities in support of the position that no legal right can be acquired to the continued use of water by subterranean percolation or from surface flowing:

*Acton vs. Blundell*, 12 M. and W., 336; *Chasemore vs. Richards*, 7 H. L., 349; *Roath vs. Driscoll*, 20 Conn., 553; *Swett vs. Cutts*, 50 N. H., 439; *Waffle vs. N. Y. C. R. R.*, 58 Barb., 413; *Goodale vs. Tuttle*, 29 N. Y., 466; *Bliss vs. Greely*, 45 N. Y., 671; *Chase vs. Silverstone*, 62 Me., 175; Washburn on Easements, Sections VI, VII.

The principle collected from these authorities is thus stated by Washburn in his work on Easements, p. 441: "It may be stated as a general principle of nearly universal application, that while one proprietor of land may not stop or divert the waters of a stream flowing in a *surface channel* through it, so as to deprive a landowner whose estate lies upon the stream below that of the proprietor first mentioned of the use of the same, or essentially impair or diminish the use thereof; if, without an intention to injure an adjacent owner, and while making use of his own land to any suitable and lawful use, he cuts off, diverts or destroys the use of an

*underground spring* or *current* of *water* which has no known or de-
fined course, but has been accustomed to penetrate and flow into
the land of his neighbor, he is not thereby liable to any action for
the diversion or stoppage of such water."

In the first case cited, *Acton vs. Blundell,* the Court say " there
is a marked and substantial difference between the law as to the
rights to enjoy an underground spring of water and that by which
a water course flowing on the surface is governed." Mr. Wash-
burn (id. p. 444), says that " among the considerations upon which
this difference is based is that the one being notorious, whoever
buys or grants it knows what passes, while the other is secret and
unknown at the time of purchase and sale, and may be in its nat-
ure constantly shifting. Nor can it ordinarily be ascertained what
part of the supply comes from one's own land and what from that
of another. The controlling circumstance is not whether the
stream was above or below ground, but whether it was or was not
*ascertained* and *defined* as a stream. If there is a natural spring,
the water from which flows in a natural channel, it cannot be law-
fully diverted by any one to the injury of riparian proprietors. If
the channel or course underground is known, it cannot be inter-
fered with." Id. 448.

In summing up the doctrine that rights cannot be acquired in
subterranean, unknown, percolating water, the learned author (id.
467 and 468) says : " When, in addition to the foregoing author-
ities, it is remembered that the common law idea of prescription
implies a grant from an intelligent grantor of something with
which he intends to part, to a grantee who intends to accept it,
and that open adverse enjoyment in such cases is nothing more
nor less than evidence of such a grant, it is difficult to see how the
idea of such a grant having been made can be raised, when neither
party could have known that the one was deriving anything from
the other."

Applying these principles to the case at bar we find from the
evidence that the water comes from these springs into the auwai
in known and ascertained channels; they are pointed out by the
witnesses and marked on the chart of the land in evidence.

The principles above stated refer to natural streams, but they

apply equally to artificial water courses as this auwai is. Such has uniformly been the decision of this Court.

A right by prescription can be acquired to the waters of a spring which come to the surface and make a pond and flow over or under the banks or through a cut in the same into an auwai constructed for the express purpose and conducting the water to lands where it may be used for irrigation.

It is, we think, proved in this case that the plaintiffs have acquired a right by prescription to the water flowing from the springs in question into the auwai, after the kalo patches on either side of the auwai and adjacent thereto have received a supply of water sufficient for the cultivation of kalo.

We say that the defendant is to have water sufficient to cultivate his land in kalo because this is the gauge of the amount of water used by this land from ancient times and measures the amount of water which remains to the use of the plaintiffs.

It is urged upon us that it is essential to rice culture that the land be drained dry while the crop is maturing and while, after harvest, it is being plowed for the next planting and that this must be done twice a year. It is in evidence that a month is required at the end of each crop. This would necessitate the draining off of the land for two months of the year; and as the drains run *under* the auwai, all this water would be lost to the plaintiffs during this time, which would be one-sixth of the whole time, during which the plaintiffs' supply would be lessened.

The trough or drain made from one of defendant's patches to another and lower one runs under and transversely to the auwai to the use of which the plaintiffs are entitled. This, by all the authorities, would be illegal, for the act here is not one done by the proprietor on his own land, but is a trespass upon the auwai in which the plaintiffs have an easement. This easement goes to the extent that the auwai is not to be cut, narrowed or interfered with by defendant to the injury of plaintiffs.

We think the trough or drain in Kalia spring, which takes the place and is the equivalent of the old waste gate, is not objectionable and does not impair the plaintiffs' rights.

The other drains under the auwai are a detriment to the plaintiffs, and our judgment is that they must be removed and the holes

through which they pass stopped up. The use of the rotary pump must be discontinued. The banks of the auwai must be restored so that it will hold the water on the lower side and be sufficiently wide for a person to walk on it while going to and fro in cleaning the ditch or seeing to the supply of water.

*S. B. Dole*, for plaintiffs.

*A. S. Hartwell*, for defendant.

Honolulu, November 3, 1884.