Rogers, J.
The complaint is that the plaintiffs were not benefited by the township ditch improvement set forth in the petition, and having been charged and assessed with a portion of such improvement and the same having been placed on the tax duplicate against them for collection, they are entitled to a permanent injunction against such assessment. This allegation of the petition having *242 been denied, the case stands for decision on the issues thus made.
It appeal’s from the pleadings, and evidence that the ditch improvement is in and over a natural water-course beginning at the Ilare-Eichner ditch, thence running up stream in a northeasterly direction through the land of the defendant, Clark Harris, thence crossing the southeast corner of the land of Lucy Harris, thence in an easterly direction across the land of David Spangler and the* Lot L. Smith road, terminating in the east line thereof. The water-course further extended on from the head of said ditch improvement eastwardly onto the lands of plaintiff, Lot L. Smith, which land is immediately east of Spangler and the Smith road. Just how far across the Lot L. Smith land the water-course originally extended does not appear, although it is safe to say that its head was in some marshy land near the eastern boundary.
About forty-two years ago the plaintiff’s (Smith) mother became possessed of a tract of land, a part of which now belonging, to the plaintiff, Smith, is involved in this case, consisting of about sixty acres, and immediately west thereof, the defendant Clark Harris’ father then owned a tract, a part of which now belonging to Clark Harris and other defendants in severalty is also involved, and over these lands the water-course in question passes.
Shortly after the mother of the plaintiff, Smith, came into possession of the Smith tract, a conversation was had between the elder Harris and Lot L. Smith’s father in regard to improving the water-course through their1, respective land, and soon thereafter for probably one-half the distance, or 500 to 600 feet, across the Smith lands from his west line, and for probably 350 feet across the Harris land from his east line, they each digged practically a straight ditch, following in a general way the old water-course for the distance above mentioned. The old watercourse was probably one foot or more deep and two to five feet wide, and the new ditch constructed was probably two feet or more deep and probably three feet wide at the top with sloping sides. Where Smith and Harris constructed this ditch, the Smith land was in the main flat and low, as well as the Harris tract, and the flow of the surface water on the Smith land was *243 in general towards this ditch and old water-course, but there were basins or low wet places on his land where the water would not all flow to the ditch-without aid of artificial drainage, although the feasible means to drain these low places was into the ditch, as the lay of the land at the low places or basins was higher than the ditch so that the water therefrom would flow toward the ditch. In other words, these low places were within the general watershed of this ditch and water-course. After reaching the ditch the flow of the water therein was westward and southwestward, over and across the elder Harris, now Spangler and Harris. The Smith lands were higher than the lands west and southwest through which the water-coui’se ran and the ditch thereafter was constructed by the elder Smith and Harris over the watercourse as above indicated.
Some tiling was done by plaintiff’s (Smith) father shortly after coming into possession of this land from the head of the ditch, as then opened, eastward and northeastward on the Smith lands; but by reason of the tendency of a part of the surface water on the east side of these lands to. flow eastward, a part of the tile became useless, and this was especially so when the elder Smith sought to tap a pond on the east side of the premises.
Since the construction of the ditch between Harris and Smith along the old water-course, as above indicated, the same has been on several occasions cleaned and probably in some respects made deeper and larger by the plaintiff Smith and the defendant Spangler, the present owner of a part of the elder Harris tract; but apparently all that part of the old water-course west and southwest of Spangler had never been materially disturbed up to the time of the ditch improvement in question, and it had become more or less filled up.
Beginning about thirteen or fourteen years ago, and' continuing off and on down to and since the ditch improvement in question, the plaintiff, Smith, has constructed through and across his land three main tile ditches terminating at the head of the open ditch along the water-course constructed by his father, one running northeastwardly, another eastwardly, and the other southeastwardly. He has also constructed many lateral tile ditches running into these main tile ditches and into the main *244 open ditch, below its head, whereby the water therefrom all empties into the open ditch on his land, and thence flows down to and through the ditch improvement - in question. These tile ditches have, as a rule, been constructed through low wet places on his land, and in a few instances have tapped the shallow basins or low places above mentioned, .where, but for the tile ditches, the water either was obliged to percolate through the earth, or evaporate, in order to escape, although, unless it were very wet, the water in these basins or low places would disappear in the course of several days. These low places, or at least some of them, were called by witnesses, marshes or swamps, swales or ponds, and were probably covered in wet weather by water six inches to one foot in depth. While it is not shown with exactness just how many acres were in this condition, I think there may have .been from six to ten acres so covered in wet seasons.
Prior to the ditch improvement in question, the water from the Smith land brought to the open ditch through the tile ditches then leading to it, as well as. the surface water finding its way to the tile and the open ditch, was without apparent interruption carried off through the open ditch then on the Smith land, and flowed westward down across Spangler, and thence southward across Lucinda and Clark Harris to the Hare-Eichner ditch. How much, if at all, the volume of water had been increased, or its flow accelerated, by reason of the original construction, or the subsequent cleaning out or enlargement of the open, ditch on the Smith and Spangler lands, or the tiling by Smith on his own land, is not shown; but, so far as appears, the plaintiff, Smith, had not by any acts of his in draining his land into the open ditch increased the volume of water in the water-course below his land beyond the natural capacity thereof. Doubtless some additional water had' been brought into this open ditch on Smith’s land b.y his own industry, and he had increased the flow by. the straightening, deepening, widening and tiling mentioned on his own land, but it is not possible to say from the evidence that the adjacent landowners west and southwest of him and lower down on the water-course had thereby suffered any substantial injury; or that he had there *245 by materially increased the flow of water upon them, by overtaxing the capacity of the stream. In other words, the capacity of the stream below does not seem to have been exceeded by the improvements of Smith, and, so far as the lower proprietors are concerned, the stream through their lands carried the water as well afterwards as before Smith had made the drainage in and over his lands.
It further appears from the evidence that the advantages which Smith had enjoyed and was enjoying when this township ditch was completed have in nowise been bettered by the said ditch. The water theretofore flowing in the open ditch across his land was in nowise accelerated, nor was Smith’s land more adequately drained, by the ditch improvement in question. If anything, in times of flood the water from Smith’s land through the open ditch thereon did not pass off as rapidly as it did before. This may have been in part due to either the faulty construction of the tile at the head of the ditch improvement or to the inadequacy of the tile to carry off the water. Whatever the cause of backing the water at the head of the ditch, it is reasonably certain that Smith reaped no advantage from the tile ditch improvement in question west of his land, unless it can be said that, because he and his predecessor in title had made the improvements on his own land by a ditch and tile in and to the old water-course, he should pay part of the expense of carrying this water beyond his own land through the tile ditch improvement laid along the old water-course over the land of lower proprietors.
The plaintiff, Smith, is an upper proprietor on this watercourse, and by reason of the location of his land thereby enjoys an advantage over the lower proprietors, which is termed an easement or servitude. This right of the upper proprietor, as .to the surface water- on his land, permits him to have all such water flow directly upon the lower proprietor who is obliged to receive it without interruption; but the upper proprietor can not by artificial means lawfully turn such water directly upon his neighbor below.
When, however, the upper proprietor has a water-course through his lands, he. has the legal right to so reasonably use the *246 stream, in connection with bis own land, as not to injure his neighbor below. Water-courses are the means which nature has provided for draining the land, and, when a water-course exists the lower lands are under a natural servitude to receive all surface water which is drained into them, subject to this qualification that the upper proprietor can not by artificial means, to the damage of the lower proprietor, increase the volume beyond the natural capacity of the stream. Hence an upper proprietor of land drained by a stream may change and control the natural flow of surface water therein, and may, by ditches or otherwise, accelerate the flow or increase the volume of water which goes into the stream, or- improve the stream by deepening, widening, straightening and the like, and may even divert it or cut a new channel therefor on his own land, so long as he allows the stream to pass off his own land, to the lower proprietor substantially as before. See Railway v. Franz, 43 O. S., 623; Crawford v. Rambo, 44 O. S., 279, 285, and cases; Wizell v. McGowen (N. C.), 85 Am. St. Rep., 705, and notes.
The limit of the upper proprietor’s right in the reasonable use of the stream on his own land is that he shall not injure the lower proprietor. But to subject the upper proprietor to an action the injury must be real, material and substantial. For the acts of the upper proprietor in the control and management of his own land are in themselves lawful, and the injury, if any, to others does not arise immediately upon the commission of the acts; hence the lower proprietor must show that he has been substantially damaged by the acts of the upper proprietor. In the control of the surface water on the land of the upper proprietor he has the" right to cut ditches or lay tile to such water-course on his own land for the purpose of carrying off the surface water within its watershed, or the territory which contributes to the supply of the stream on his land, at least up, to the capacity of the stream, because the upper owner has the right to all the advantages of drainage, reasonably used, which the stream may give him. See Waffle v. N. Y. C. R. Co., 58 Barb., 413; affirmed 53 N. Y., 11; Miller v. Loubach, 47 Penn., 154; Roth v. Zembler, 49 Neb., 351, and cases; Treat v. Bates, 27 Mich., 390; Vanness v. Fleming, 79 Iowa, 638 (18 Am. St. Rep., 387).
*247 All the waters which the plaintiff, Smith, has artificially drained, above the ditch improvement in question were surface waters drawn from the territory which naturally contributed to the supply of the stream on his land, and those basins, low places, swamps, swales or ponds, so-called, were all surface water within this territory, or the watershed of this stream. The fact that certain parts of Smith’s land consisted of these basins or low places which would not drain directly into the stream except by artificial means did not constitute the water collecting thereon any the less surface water. See Case v. Hoffman (Wis.), 36 Am. St. Rep., 937; Brandenberg v. Zeigler (S. C.), 89 Am. St. Rep., 887; Railroad Company v. Brevort, 67 Fed., 129 (25 L. R. A., 527), and notes.
I am of belief that the plaintiff, Smith, was not deprived of the right to drain these low places by artificial means into the stream on his own land, so long as they were" within the general watershed, and he did not thereby so exceed the capacity of the stream as to cause a real, material and substantial injury to the lower proprietor.
I am therefore of opinion that the ditch improvements having in nowise resulted in any advantage or benefit to the plaintiff, Smith, which he did not have before the improvement was made, and the plaintiff, Smith, having the lawful right to drain his lands into the water-course flowing through them, subject to the qualifications above mentioned, and owing no duty on that account to the lower proprietors, the plaintiff, Smith, was not chargeable with any part of the assessment for said improvement and is entitled to a permanent injunction against its collection.
The Pontifical College is shown to have drained no water artificially into the ditch improvement in question, and also to have been' in nowise benefited by the improvement, and is also entitled to such injunction. The plaintiffs are therefore entitled to the relief prayed for in the petition and it is so decreed*
■ These plaintiffs having been assessed for a part of this ditch improvement and all other persons who are assessed being defendants, it remains to determine under Section 4491, Revised Statutes, who should be charged with the assessments hereto *248 fore charged against plaintiffs, and the apportionment thereof.
G. J. Marriott, for plaintiff.
Donaldson I'ussing, for defendant.
It appears that the plaintiff, Smith, is charged with $101.55 and the college with $32.64, in all aggregating $134.19. I am of opinion that this last amount should be charged and assessed against the lands of the defendants, Clark Harris, Lucy Harris and David Spangler, in proportion to the number of feet of ditch heretofore apportioned to them' respectively, to-wit: against the lands of Clfirk Harris $71.19, and the lands of Lucy Harris $8.87, and against the land of David Spangler $54.13, and levy made therefor accordingly, and that the costs of this action be paid by the township, and it is so ordered.