McCORMICK, *Appellant*, v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY.

1. **Collection and Discharge of Water upon Neighboring Lands.** A land owner has no right to concentrate into one stream the water coming upon his own land and discharge it upon his neighbor's. Even if it would naturally flow in that direction, the

concentration would necessarily increase the injury, and for this an action would lie.

2.   Case Adjudged. A railroad company, in constructing its road across a basin-shaped piece of low land, raised an embankment with a culvert or water-way, through which water, collected on one side of the road from the adjacent high lands and from the overflow of a neighboring creek, escaped to the other side and damaged the adjoining premises. *Held*, that the company was liable; and so far as the overflowed water from the creek contributed to the injury, the liability was the same, whether the overflow was caused by the act of the company in building a bridge over the creek too narrow for the volume of water or not.

*Appeal from Buchanan Circuit Court.*—Hon. Jos. P. Grubb, Judge.

Reversed.

*Ben. Loan* for appellant.

*Willard P. Hall* for respondent.

Napton, J.—When this case was here in 1874, (57 Mo. 433,) the court clearly indicated the ground upon which the plaintiff's right of recovery must be based. The opinion in the case adopted the views of Lowrie, J., in *Kauffman v. Griesemer*, 26 Pa. St. 415. And I doubt if they can be expressed more forcibly or plainly than in the very language of this eminent judge : "Where two fields adjoin," says Judge Lowrie, "and one is lower than the other, the lower must necessarily be subject to all the natural flow of water from the upper one   *   *   Hence the owner of the lower ground has no right to erect embankments whereby the natural flow of the water from the upper ground shall be stopped; nor has the owner of the upper ground a right to make any excavations or drains by which the flow of water is diverted from its natural channel, and a new channel made on the lower ground; nor can he collect into one channel waters usually flowing off into his neighbor's fields by several channels, and thus increase the wash upon the lower fields.   *   *   If the owner of

the upper ground wrongfully direct an unnatural quantity of water upon the ground of a lower neighbor, by collecting several streams together and discharging them at one place, or by any other means, the neighbor below may have an action against him." This principle is recognized by the Supreme Court of New York in *Waffle v. N. Y. Central R. R. Co.*, 58 Barb. 413: "Every person has the unquestionable right," says Judge Thompson of that court, "to drain the surface water from his own land, to render it more wholesome, useful or productive, or even to gratify his taste or will, and if another is inconvenienced or incidentally injured thereby, he cannot complain. No one can divert a natural water course and stream through his land, to the injury of another, with impunity; nor can he, by means of drains or ditches, throw the surface water from his own land upon the land of another, to the injury of such other. But where a person can drain his own land without turning the water upon the land of another, or where it can be done by drains emptying into a natural stream and water course, there can be no doubt of his right thus to drain even though the effect may be to increase the volume of water unusually at one season of the year, or to diminish the supply at another."

These general principles were in truth drawn from the Roman law, but fully recognized to be sound in English and American adjudications, and were the basis of the decision of this court when the case was here before. As Judge Vories, who delivered the opinion of the court, observed: "The plaintiff complains that the defendant had so constructed its road that the embankment made therefor had collected a large body of surface and overflowed water on the east side of its road-bed, where the same adjoined the land of plaintiff, and that after said water had been so collected in a large body or pond, the defendant negligently and maliciously cut an artificial channel from said body of water through the embankment of its road-bed, and drained all of said large body of water on to plaint-

iff's land, by which plaintiff was damaged," &c. · And the judge proceeded to say that an instruction to the jury which declared in effect that if the defendant did this act charged, in the manner charged, defendant was liable, was a proper instruction, and should have been given. The words "negligently and maliciously" seem to be merely ornamental in this case—it is immaterial about the motive or the care except as it affects the amount of damages. It is not likely that the defendant paid any attention except to the interests of the company, or put in the culvert for any purpose other than the protection of their road. The question is, whether they had the right to do this, to the injury of plaintiff.

The theory of the present action is based on the following facts stated in the amended petition: The plaintiff owns fifty acres of land on the west side of the railroad, and charges that on the east side of said road a large body of water was collected by the embankment on which the road was built, partly from the high lands adjoining, but principally from the overflow of Contrary creek, and the back water from it produced by a bridge over it, built by defendant, which is alleged to be too narrow to allow the water, in heavy rains, to pass through it, and that in 1870 the defendant put a culvert or box or artificial channel, which discharged all the water thus collected upon plaintiff's land and produced the injuries complained of. As the plaintiff took a non-suit because of the instructions given by the court, the only question for our consideration is, whether these instructions were a fair exposition of the law to the jury, as it had been previously declared by this court, and since the propriety of instructions depends very much on the tendency of the evidence, one way or another, and they are not designed to be mere abstractions, it is proper, in order to determine their propriety, to look into the facts sworn to and those denied by the witnesses at the trial.

The facts which the plaintiff's evidence tended to

prove, whether to the satisfaction of the jury or not is not material, were about these:   The plaintiff was the owner of fifty acres of land on the west side of the defendant's railroad, and a portion of it, from two to four acres, was in a piece of low bottom two or three feet lower than the surrounding ground, and this low ground or basin extended over the road on the east side of it, to the extent of six or four acres—the witnesses differing as how the railroad divided this swag; all this low ground had been cultivated every year for twelve or sixteen years before the road was built.   The road ran north and south and divided this bottom or basin, as has been stated, leaving two or four of the eight acres on the west side.   Forty or fifty rods north of this basin, the road crossed a creek called Contrary creek, which ran from east to west, and a bridge was built over it by the defendant, which, however, in heavy rains and high water did not allow all the water to pass through, but backed up the water so as to flow back through the depression necessarily made by the embankment on which the track was laid, into the basin and occasioned a standing pond on the east side of the track, sometimes three or four feet deep, and occasionally, in heavy rains, overflowing the track.   To prevent this, I suppose, the defendant in November, 1870, cut a sluice or box thirteen by eighteen inches in the lowest part of this depression, and this of course threw all this water, thus collected both from the high lands adjoining and from the back water of Contrary creek, when the rainy season of June, 1871, came on, into plaintiff's field, destroyed ten acres of corn he had planted there, filled up the cellar of his house, which is not in the the basin, but thirty or fifty rods from it, ruined his well, destroyed his garden and perhaps occasioned ill health in his family

Supposing these facts to have been established, the liability of defendant to an action for the damages occasioned thereby, is plain if the doctrine asserted in this case before, and in all the cases on this subject, so far as I have

864    SUPREME COURT OF MISSOURI,

McCormick v. The Kansas City, St. Joseph & Council Bluffs Railroad Company.

observed, is to be adhered to. Let us then compare the instructions given with this theory of the law. The first instruction for defendant is as follows: "The defendant had a right to construct its railroad so as to permit the water in proof to flow as it would have done if said railroad had not been made. And if the jury believe from the evidence that if said railroad had not been made, the water in proof would have overflowed the land of plaintiff and would have done the same injury to plaintiff's land and premises, and to the crop of corn growing on said land, and made said land as wet and unfit for cultivation, as was done by the water flowing through the culvert in proof, they will find for defendant."

There was no evidence whatever to justify such an instruction. It was submitting to the jury a question of fact, upon which all the evidence as to the land before and after the road was built, contradicted the hypothesis which they were authorized to find, and which, from its very nature, was impossible. The object of this instruction, as of the one succeeding it, seems to have been to impress upon the jury that if the same amount of water would have fallen on plaintiff's land, without any railroad embankment, that was conveyed to it through this artificial channel made by the defendant, the construction of this culvert or box was no ground of action. But this, as we have seen, is not the law. There is a great difference between allowing the surface water and the water accumulated by the overflow of the creek, to percolate through a thousand or ten thousand avenues, as it would have done if no railroad was there to intercept it, and by an embankment gathering it into one pond and precipitating it through a single channel upon plaintiff's land. And this is exactly what the court declared the defendant had a right to do, in the fourth instruction, and what this court declared in the former opinion the defendant had no right to do.

The fourth instruction is as follows: "The defendant had the right to construct all such culverts or drains as at

any time might be found proper for the protection of the road-bed from water backed up against the road by overflow of a creek or excessive rains, although such culvert or drain may have caused such overflow or rain to flow in a different direction or greater quantity than it had done before such embankment or culvert was made; and in constructing such culvert defendant was only required to use reasonable care, considering all the circumstances at the time of such construction."

The fifth instruction is as follows: " Though the jury find from the evidence that in June, 1871, the stream called Contrary creek broke through or overflowed its natural banks and passed into the basin mentioned, and through the culvert or waterway placed in said basin by defendant, under or across the embankment made by defendant, dividing said basin, and upon plaintiff's land, and thereby caused the injuries complained of herein, yet the jury must find for defendant, unless they further find from the evidence that said stream did, at the time of the injury so complained of, break through or overflow its banks in the manner and with the effect as above stated, in consequence of improper or negligent construction of the bridge across said stream used as a railroad bridge by defendant."

This instruction is of the same complexion as the others which were given. It evades the gravamen of the charge, which was the precipitation of a large body of water collected by the road-bed on the plaintiff's land. It is immaterial how the water got there, whether by natural channels from the hills or highlands, or by back water from the creek; the defendant had no right to concentrate it in a single channel and force it on to plaintiff's land. This is the doctrine as established by all the authorities, and the sufficiency or insufficiency of the bridge was entirely immaterial, if the back water from the creek did, in point of fact, find its way into this basin. The defendant had a right, undoubtedly, to protect its road, and to do so had

an unquestionable right to draw off the water, but not so as to be injurious to his neighbor.    It must be drawn off in some natural channel—some stream in the vicinity, if any such existed, or by a variety of channels, or, in short, by any means defendant might select or prefer, provided no damage was done to others by the plan adopted.    The instruction in regard to damages was correct.    If no evidence was given in relation to the pecuniary losses of plaintiff, the jury would, of course, have no basis on which to find more than nominal damages.

In regard to the evidence excluded, of the witness Rector, the court may have been right on the theory of the case adopted by the circuit court, but I think the evidence was of no consequence, and whether excluded or admitted, was immaterial, since other evidence clearly showed that the elevation of the embankment of the road would necessitate a consequent proportionate depression, and this depression would suffice to carry off the back water down to the basin or pond.    The evidence, I think, should have been admitted upon the theory which this court sanctioned, but it was not material to a recovery.    The judgment will be reversed and the cause remanded.    NORTON and HENRY, JJ., concur.

HOUGH, J., DISSENTING.—The defendant's road running north and south bisects an elliptical basin with no out-let, having a superficial area of about eight acres, and its greatest diameter east and west, which annually received the surface water from the surrounding country, and at its eastern extremity an occasional overflow from Contrary creek.

In November, 1870, the defendant, in order to protect its embankment on which its track was laid across said basin, put in and through said embankment in the basin an 18x18 inch box, eighteen inches below the ties, to prevent the surface water from so accumulating on the east side of the road-bed as to flood the track.    Six months after this

sluice-way was constructed, that is in June, 1871, the east side of the basin was flooded by an overflow from Contrary creek, and a portion thereof ran through the sluice-way into the western half of the basin and injured the plaintiff's corn which was in and around the basin on the west side of the railroad. It is quite plain that the water ran just where it would have run, and in less quantity than it would have run if there had been no embankment across the basin. For the top of the sluice-way being eighteen inches below the ties, there was a depth of from one to three feet of water, which was kept back from the western portion of the basin, and the surplus gradually ran through, as it accumulated and spread out in the basin on the west. This state of facts fully warranted the court in giving the first and second instructions asked by the defendant. Instruction numbered four is in conformity with the decision of this court when the case was here before. 57 Mo. 433. As the petition charged that the negligent construction by the defendant of its bridge over Contrary creek, caused the overflow, it follows that instruction numbered five was properly given. Instruction numbered seven is undoubtedly the law, and in view of the testimony offered, was properly given. These were all the instructions given for the defendant, and the plaintiff took a non-suit.

When this case was before this court in 1874, Judge Vories, in delivering the opinion of the court, said : "The general rule, however, is, that either municipal corporations, or private persons, may so occupy and improve their land, and use it for such purposes as they may see fit, either by grading or filling up low places, or by erecting buildings thereon, or by making any other improvement thereon to make it fit for cultivation or other profitable or desirable enjoyment; and it makes no difference that the effect of such improvement is to change the flow of the surface water accumulating or falling on the surrounding country, so as to either increase or diminish the quantity of such water, which had previously flowed upon the land of the

adjoining proprietors to their inconvenience or injury. Ang. Wat. Coouses, p. 122, § 108, and following, and cases there cited; *Goodale v. Tuttle*, 29 N. Y. 459; *Waffle v. N. Y. Central R. R. Co.*, 58 Barb. 413; *Turner v. Inhabitants, &c.*, 13 Allen 291; *Imler v. The City of Springfield*, 55 Mo. 119, and cases there cited. The same rule would apply to water flowing over the country which had escaped from the banks or natural channel of a running stream of water by reason of a flood in the stream occasioned by heavy rains or the melting of snow upon the surrounding country." In the further discussion of this subject, Judge Vories, in speaking of the rights of the owner of land, said: "He must improve and use his own lands in a reasonable way, and in so doing he may turn the course of and protect his own land from the surface water flowing thereon, and he will not be liable for any incidental injury occasioned to others by the changed course in which the water may naturally flow, and for its increase upon the land of others. Each proprietor in such case is left to protect his own lands against the common enemy of all. In the present case the plaintiff complains that the defendant had so constructed its road that the embankment made therefor had collected a large body of surface and overflowed water on the east side of its road-bed where the same adjoined the land of plaintiff, and that after said water had been so collected in a large body or pond, the defendant negligently and maliciously cut an artificial channel from said body of water through the embankment of its road-bed and drained all of said large body of water on the plaintiff's land, by which plaintiff was damaged, &c. The first instruction asked by the plaintiff told the jury in effect, that if the defendant did this act charged in the petition, in the manner therein charged, the plaintiff had a right to recover. We think this instruction ought to have been given."

There can be no question as to the correctness of these views, and I have made such copious extracts from the

opinion of the court for the reason that it was delivered in the same case now before us. The testimony in the cause was not preserved in the former bill of exceptions. The transcript simply stated that there was testimony tending to prove the allegations of the petition. Now the case is materially different. The testimony shows that the defendant did not collect a large body of water on the east side of its road-bed, and after so collecting it, construct an artificial channel and precipitate the whole thereof upon the plaintiff. Judge Vories recognized the right of the defendant to drain the surface water from its road-bed so as to preserve the same for continued and profitable use, and said that such drainage should be made by means of culverts or otherwise, "so as to occasion no unnecessary inconvenience or damage to plaintiff," citing *Kauffman v. Griesemer*, 26 Pa. St. 415 and note; *Waffle v. N. Y. Central R. R. Co*, 58 Barb. 413. These cases were suits for the obstruction of water courses or running streams, and not for the diversion of surface water, and the opinion of the court as to the right of the owner of land to protect it against surface water is not based upon them, as a reference to the cases cited will show. Yet in the first of these cases, Woodward, J., who delivered the opinion of the court, after citing *Martin v. Biddle*, and other cases, said: "These cases recognize the principle that the superior owner may improve his lands by throwing increased waters upon his inferior through the natural and customary channels, which is a most important principle in respect not only to agricultural, but to mining operations also." And in *Martin v. Biddle*, which was the case of a running stream, Lowrie, J., speaking of the land owner, said: "So, also, he may use proper means of draining his ground where it is too moist, and discharge the water according to the natural channel, even though the flow of water upon his neighbor be thereby somewhat increased." I am of opinion that the judgment of the circuit court should be affirmed.