ANTON HOESTER, Appellant, *v.* ERNST HEMSATH, Respondent.

February 24, 1885.

1. DAMAGES — ADJOINING PROPRIETORS — SURFACE WATER — COMMON-LAW RULES. — The rights of land owners .with respect of the flow of surface water over their lands is governed by the rules of the common law.

2. —— A land owner may rightfully so ditch his own land as to collect, and cause to flow into a pond in a body, surface water which formerly flowed into the pond through natural channels.

3. —— EQUITY. — Where the evidence leads to the conclusion that an overflow of the pond is caused by detrition rather than by an increased flow of water, equity will not relieve the owner of the overflowed land.

APPEAL from the St. Charles Circuit Court, EDWARDS, J. *Affirmed.*

W. A. ALEXANDER and C. W. WILSON, for the appellant: No person has the right to protect himself from a stream or water-course by throwing it on the lands of another, or, on the ground of self-protection, to prevent the waters of floods and freshets from flowing where they are accustomed to flow. — *McCormick* v. *Railroad Co.*, 70 Mo. 359; *Shane* v. *Railway Co.*, 71 Mo. 237; *Munkries* v. *Railroad*

*Co.*, 72 Mo. 514; Ang. on W. C., sects. 108*j*, 108*k*; *Bruson* v. *Railroad Co.*, 78 Mo. 514.

C. DAUDT, for the respondent: The supreme court of the state, in a long line of decisions, have sustained the common-law doctrine, contended for by the respondent. — *Clarke, Admr.*, v. *Railroad Co.*, 36 Mo. 224; *Finley* v. *City of Springfield*, 55 Mo. 119; *Jones* v. *Hannovan*, 55 Mo. 462; *M'Cormick* v. *Railroad Co.*, 57 Mo. 437; *Hosher* v. *Railroad Co.*, 60 Mo. 329; *Minkers* v. *Railroad Co.*, 72 Mo. 514; *Benson* v. *Railroad Co.*, 78 Mo. 504; *Stewart* v. *City of Clinton*, 79 Mo. 603.

ROMBAUER, J., delivered the opinion of the court.

It has been for some years past a mooted question in this state, whether the rights of land owners, in regard to the flow of surface water over their land, including the control and diversion of such water to the injury of adjoining owners, should be determined by the rules of the common law or by the rules of the civil law.

This question must be considered to be set at rest by the exhaustive opinion, delivered by the supreme court at its present term in the case of *Abbott* v. *Kansas City, St. Joe and Council Bluff Railroad Co.* In that opinion the supreme court reviewing its former ruling unanimously declares that the common law of England, having been adopted by statute as the rule of action and decision in this state, any law, usage or custom to the contrary notwithstanding, must be the governing rule on this subject as on all others. It overrules the case of *McCormick* v. *Railroad Co.* (70 Mo. 359), and *Shane* v. *Railroad Co.* (71 Mo. 237), as far as the same are in conflict with that view, and adheres to, and reinstates the common-law doctrine, recognized heretofore as controlling on that subject by a long course of uniform decisions. *Clark* v. *Railroad Co.*, 36 Mo. 224; *Imler* v. *Springfield*, 55 Mo. 119; *Jones* v. *Hannovan*, 55 Mo. 462; *McCormick* v. *Railroad Co.*, 57 Mo. 437; *Hosher* v. *Rail-*

*road Co.*, 60 Mo. 329 ; *Munkers* v. *Railroad Co.*, 60 Mo.
334. Starting from the premises that the rights of the
parties in this controversy, are to be determined by the
rules of the common law, we have examined the record in
this cause for the purpose of determining whether an error
was committed by the court below, in the trial, by which
the plaintiff, appellant has been prejudiced.

The action is one, which in one count seeks to recover
damages at law for the flooding of plaintiff's land; and in
another count seeks equitable relief against defendant, who
is charged with having erected a dam and constructed a
ditch, diverting the natural flow of water from its course to
plaintiff's injury.

The suit was instituted against two defendant land owners,
who answered separately, defendant Hemsath's answer
being the general issue and the statute of limitations.
Upon the trial of the legal issue before a jury, and after
the close of the testimony plaintiff dismissed as to defend-
ant Linnemann, and the case was submitted to the jury on
the legal issue against Hemsath, the respondent, alone.
The jury found a verdict for the defendant, and subse-
quently the equitable cause of action being submitted to
the court upon the same testimony, the court found the
issues likewise for defendant, and dismissed plaintiff's bill.

As the right of action in cases of this character is con-
trolled by the particular facts of each case, a detailed
review of the testimony is essential to determine whether
plaintiff has shown himself entitled to either legal or
equitable relief. The testimony, which is almost wholly
free from conflict, seems to establish the following facts
with reasonable certainty : The Cork Hill or Caulk Hill
Branch is a dry ravine, from one-half to three-quarters of
a mile in length, and draining in connection with other
small ravines, which empty into it, a hilly surface of consid-
erable extent. The water coming down this ravine is the
result of rains and melting snows, and has washed out a

bed with more or less defined banks, but there is no living
stream running in this bed, and whatever springs there are
in the ravine are wet weather springs, which dry up entirely
with the approach of warm weather.  Plaintiff himself tes-
tifies the " the water coming down these branches is all
rain water, there is no creek or living stream," and one of
his witnesses (Kaltmeyer) says, that " the Caulk Hill
Branch is a dry branch or ravine, which carries off the
rain and snow water from the hills."   It may be said
therefore that touching the character of this water-course
there is no controversy whatever.

It appears from a survey made by order of the trial
court, a plat whereof has been offered in evidence and
forms part of the record in this cause, that the lands of
plaintiff and defendant lie in the bottom, at and near the
foot of the hills from which the water comes through this
branch or ravine, and that the location of lands of the
parties respectively, and of the ditch in controversy is as
shown by the following sketch : —

A witness for defendant (Peter) testified, without contradiction, that as early as fifty-five years ago the water coming down Cork Hill Branch ran along the foot of the bluffs directly into the slough or pond marked by dotted lines on the above sketch, and known as Milk Sick Pond, and a witness for plaintiff (Heisel) testified that the water from the branch would all go into Milk Sick Pond twenty years ago. In fact there is no controversy in the testimony but that Milk Sick Pond is the lowest place in the vicinity, and that the waters coming from the bluffs are liable to run into it, and the only contention plaintiff makes is that before the digging of the ditch complained of, they first spread over the Linnemann, Buse, and Hemsath lands before reaching the pond, and are now conducted directly to the pond through the ditch constructed by defendant.

About fifteen years ago Buse, defendant's grantor, built a levee or dam at the place where the branch left the bluffs, and also constructed a ditch next to the county road to keep the water from his own lands. This ditch the defendant subsequently continued, and about seven years ago, with the consent of Schneider, he completed it so as to carry the waters directly into the slough or pond. There was testimony tending to show that during the last few years the water in the pond was higher than it had been in former years; that it flooded the plaintiff's land and caused him serious injury. But whether this rise in the water in the pond was due to its gradual filling up, by brush and logs and the *detritus* of the neighboring bluffs, or to the fact that the waters reached it by a more direct route than formerly the testimony left in doubt.

The rule of the common law on the subject of surface water was thus stated in *McCormick* v. *Railroad Co.* (57 Mo. 433): "The general rule, however, is that either municipal corporations or private persons may so occupy and improve their land, and use it for such purposes as they

may see fit, either by grading or filling up low places, or by erecting buildings thereon, or by making any other improvement thereon to make it fit for cultivation or other profitable or desirable enjoyment, *and it makes no difference that the effect of such improvement is to change the flow of the surface water accumulating or falling on the surrounding country, so as to either increase or diminish the quantity of such water which had previously flowed upon the land of the adjoining proprietors to their inconvenience or injury.* Ang. W. C. p. 122, sect. 108; *Goodale* v. *Tuttle*, 29 N. Y. 495; *Waffle* v. *N. Y. Cen. Ry. Co.*, 58 Barb. 413; *Turner* v. *The Inhabitants, etc.*, 13 Allen, 291; *Imber* v. *City of Springfield*, 55 Mo. 119, and cases there cited.'' The rule thus stated is to-day the unquestioned rule in this state. The only fact upon which the plaintiff, under the testimony above detailed and the rule above mentioned, was entitled to go to the jury, was this: Whether the injury complained of was the proximate result of defendant's act in collecting the surface water in his ditch and throwing it in one body into the slough or pond adjoining plaintiff's land. That fact was submitted by the court to the jury on instructions more favorable to plaintiff than he had a right to demand, and found by the jury adversely to him, and there is nothing in the record which would justify us to disturb that finding.

Nor is there anything in the record which would justify us to disturb the decree of the court in dismissing plaintiff's bill. That the jury have by their verdict negatived any injury for which defendant was responsible would tend to show that the action of the court was correct, even regardless of the fact that all the parties were not before it to enable it to make a final decree. A full and careful examination and analysis of the testimony has led us to the conclusion that the main cause of the plaintiff's injuries is a force which is beyond the remedial process of courts of

chancery, the eternal force of detrition, which has leveled the mountains and filled the sea.

With the concurrence of all the judges the judgment is affirmed.