RYCHLICKI, *Appellant*, v. THE CITY OF ST. LOUIS.

**Municipal Corporation:** IMPROVEMENT OF STREETS: DRAINAGE OF SURFACE WATER. A city may grade and improve its streets, and is not liable for injuries arising from the incidental interrup-tion or change in the flow of the surface water occasioned thereby, save for such injuries as may arise from the negligent doing of the work. It may also protect its streets from water that accumu-lates thereon, and to that end may construct drains, gutters, culverts and conduits, and may discharge the water into natural drains, but it has no right to discharge the water thus accumulated in a body upon adjacent lands. (RAY, C. J., dissenting.)

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

REVERSED AND REMANDED.

*A. J. P. Garesché* for appellant.

(1) The right of the city to discriminate between two owners, by casting the injury of its embankment from the northwest corner of the land of plaintiff, is denied.   Possibly and probably the injury which but for the conduits or drains under Page ( or Cook ) avenue to the northwestern lot is, in the eye of law, *damnum absque injuria.*   But to cast these waters in a torrent upon plaintiff's land, to convert it into a channel for the drain of an entire district, is a confiscation of plaintiff's property to public uses,· a right of eminent domain, to be exercised only upon just compensation. Const. U. S., art. 5 ; *Attorney General v. Leeds,* 5 L. R. Ch. Ap. 583 ; *Noonan v. Albany,* 21 Alb. Law Journal. As to this constitutional restriction—*Schatner v. Kansas City,* 53 Mo. 165 ; *Imler v. Springfield,* 55 Mo. 126 ; *Wegman v. Jefferson City,* 61 Mo. 55.   True these cases have been overruled, but only as to their application, never as to the distinction on which plaintiff rests for a recovery.   A distinction which cannot be better drawn than by two citations from the same state—in one of which the rulings of 83 Mo. 271—*Foster v. City of St. Louis,* is maintained—in the other is upheld as invoked in the present case.   With which distinction the two cases are perfectly harmonious and, without it, absolute contradictions.   *Templeton v. Voshloe,* 72 Ind. 135 ; *Railroad v. Stevens,* 73 Md. 278.   This distinction is also maintained in : Dillon. Mun. Corp. ( 3 Ed.) p. 1078, sec. 1051 ; *Winn v. Rutland,* 52 Vt. 494 ; *Pettigrew v. Evansville,* 25 Wis. 230 ; *Kobs v. Minneapolis,* 22 Minn. 162 ; *McClure v. Red Wing,* 28 Minn. 194 ; *Jacksonville v. Lambert,* 62 Ill. 521 ; *Phinizy v.*

*Augusta*, 47 Geo. 268 ; *Union Springs v. Jones*, 51 Ala. 656 ; *Merrifield v. Worcester*, 110 Mass. 217 ; *Ashley v. Port Huron*, 35 Mich. 298.'

*Leverett Bell* for respondent.

The plaintiff in this case seeks to recover for injuries done to his land by surface water, precipitated thereon by the operations of the city government in opening Page avenue, under authority of ordinances duly enacted for the purpose. It is not alleged nor claimed that there was any negligence or want of care on the part of the defendant in executing the work. The case stated in the petition, and made by the proof, did not entitle the plaintiff to recover, and the court below properly directed a non-suit. *Foster v. St. Louis*, 71 Mo. 127. *Abbott v. Railroad*, 83 Mo. 271, fully sustains the action of the court below, and overrules *McCormick v. Railroad*, 70 Mo. 359 and *Shane v. Railroad*, 71 Mo. 237, on authority of which the present case was instituted.

BLACK, J.—When this cause came on for trial in the circuit court, counsel for plaintiff made a statement of the facts which he proposed to prove. The statement was taken as proof of the matters recited, and thereupon the court directed a verdict for defendant, and plaintiff took a non-suit with leave, etc.

This statement, which for the purposes of this appeal must be taken as true, is not as full as might be desired, but it discloses these facts: The plaintiff owns fifteen arpents of land in the corporate limits of the city of St. Louis, bounded on the north by Page avenue and on the east by King's Highway. To the north thereof, and separated therefrom by Page avenue, is a block of land, and formerly the surface water on this block, as well as from a large district of country to the north thereof, flowed eastwardly and southwardly

and on and over the plaintiff's land.   In opening the
streets before named, the defendant diverted the surface
water at the north line of the block before mentioned
and caused it to flow east to King's Highway, thence
south to Page avenue, thence west along the north line
of that street for a short distance, and thence by drains
and conduits under the road-bed of Page avenue, dis-
charging the same upon plaintiff's property.   By reason
of the water thus collected and thrown upon plaintiff,
six or eight acres of his land were turned into a morass
and ruined for the purpose of cultivation to which use
the land had been before devoted ; all to the damage of
plaintiff in the sum of two thousand dollars.   The work
upon the streets was done by virtue of city ordinances
duly enacted.

The only question is whether these facts constitute
a cause of action, and that they do we entertain no
doubt.   According to the rules of the civil law, as
adopted by many if not most of the states of this Union,
the owner of the higher adjoining land has a servitude
upon the lower land for the discharge of surface water
naturally flowing upon the lower land from the dominant
estate.   But it is well settled by the decisions of the
courts which follow the civil law that this servitude
extends only to surface water arising from natural
causes, such as rain and snow, and that the owner of the
higher land cannot collect the surface water in drains,
trenches or otherwise and precipitate it in a body upon
the lower land to the damage of the owner thereof.
*Crabtree v. Baker*, 75 Ala. 92 ; *Ludelling v. Stubbs*, 34
La. Ann. 936 ; Wash. on Eas. (3 Ed.) pp. 20, 450.

The supreme judicial court of Massachusetts is pro-
nounced in its adherence to the common-law rule as it is
called on this side of the Atlantic.   That court uses this
language :   " But there is a well-settled distinction,
that although a man may make any fit use of his own
land which he deems best, and will not be responsible

for any damages caused by the natural flow of the surface water incident thereto, yet he has not the right to collect the surface water on his own land into a ditch, culvert or other artificial channel, and discharge it upon the lower land to its injury." *Rathke v. Gardner*, 134 Mass. 14. Other cases in the same court and in other courts are to a like effect. *White v. Chapin*, 12 Allen, 516 ; *Martin v. Simpson*, 6 Allen, 103 ; *Pettigrew v. Evansville*, 25 Wis. 223 ; *Templeton v. Voshloe*, 72 Ind. 134.

The question presented by this record is whether the defendant may, in the construction of its streets, collect surface water and then by means of drains and conduits discharge it in volume upon the land of an adjoining proprietor. From the authorities before cited it makes no difference whether this particular question is tried by the rules of the civil law or by what is called the common-law rule. The result is the same, for either line of decisions rules this question against the defendant. According to our adjudications, at this day the defendant may grade and improve its streets, and is not liable for injuries arising from the incidental interruption or change in the flow of the surface water, save such injuries as may arise from the negligent doing of the work. *Jones v. Railroad*, 84 Mo. 153 ; *Foster v. City of St. Louis*, 71 Mo. 157. So, too, the defendant may protect its streets from water that accumulates thereon, and to that end may construct drains, gutters, culverts and conduits, and may discharge the water into natural drains ; but it has no right to discharge the water thus accumulated upon adjacent lands in a body as was done in this case. The true rule in cases like this was declared in *McCormick v. Railroad*, 57 Mo. 434, where it is said, the owner of land cannot collect all the water falling upon his buildings and by means of pipes or gutters precipitate the water upon the land of an adjoining proprietor ; nor can he collect the surface water from the

surrounding country into a pond and then turn it loose in large quantities so as to injure his neighbor. The owner of higher land has no right, by means of artificial ditches, to conduct surface water to, and discharge it upon, the lower land of his neighbor, in increased volume, thereby subjecting the lower estate to an injury it otherwise would not have suffered. *Benson v. Railroad*, 78 Mo. 512.

We deem it unnecessary to pursue this question any further. As we understand the law its judgment is, upon the facts before us, that defendant must respond in damages. The judgment is therefore reversed and the cause remanded. SHERWOOD, J., absent; the other judges concur, except RAY, C. J., who dissents.

### DISSENTING OPINION.

RAY, C. J.—Not being able to concur in the opinion of my associates in this cause, I present the following statement of the case, together with my views of the law, and the reasons for my non-concurrence. The petition in this case, after alleging that plaintiff is the owner, and in possession of a tract or parcel of land, situated in the city of St. Louis, containing fifteen arpents, more or less, and bounded west by the land of Bernard Pratt, south by land of owners unknown, east by the King's Highway and north by Page avenue, proceeds as follows:

"Plaintiff further states that defendant, illegally and without color of title, or right, under and across Page avenue laid conduits or drains; and by which conduits and drains the surface waters, falling north of said Page avenue, were collected and thrown upon the said land of plaintiff.

"Plaintiff further states that the tract so owned and possessed by him, plaintiff, was, at the time of laying said conduits and drains, cultivated land, and by reason of the said surface waters being so thrown upon it was ruined, for the purpose of cultivation, turned

into a morass, to the great detriment of plaintiff, and by reason of all of which he has sustained damages in the sum of two thousand dollars and costs, and for which sum he asks judgment."

The answer thereto was a general denial. At the trial it was agreed that the following facts should be taken as proved by the plaintiff : "That the plaintiff was at the time of the institution of this suit, and for a long time previous thereto, the owner in fee simple, and in possession of the property described in the petition ; that the surface water on the land, north of the tract, in petition described. flowed eastwardly and south-wardly upon said land of plaintiff; that the defendant in opening Cook or Page avenue collected all of the surface waters of a large area north, so that they were diverted along the north edge of the block, next north of plaintiff's land, eastwardly to the western line of King's Highway, and were then brought southwardly down to the northwest corner of King's Highway and Cook, or Page avenue, and then turned westward on north line of Cook or Page avenue, and then by drains or conduits laid by the city under the road-bed of Cook or Page avenue, under authority of ordinances for the establishment of said streets, duly enacted, discharged on the land of plaintiff; that throwing said surface water, thus collectively on the land of plaintiff, has, to the extent of six or eight acres, turned plaintiff's land, as described in the petition, into a morass ; and ruined it for the purpose of cultivation. And that plaintiff by the diminished rental caused by these surface waters had been damaged to the extent of two thousand dollars."

Upon this agreed state of facts, the court instructed the jury that the plaintiff was not entitled to recover. Plaintiff thereupon took a non-suit, with leave to move to set the same aside, and his motion in that behalf

being overruled, appealed the cause to the St. Louis court of appeals, and the same has been duly transferred to this court.

From the above statement, it appears that plaintiff seeks to recover damages for injuries done to his land by "surface water" collected and thrown upon it by the operations of the city government, in opening and constructing Page avenue, under authority of ordinances duly enacted for that purpose. It may be well to premise, that there seems to be a manifest inconsistency and contradiction in the case made by the pleadings, and that presented by the "agreed facts," upon which the case appears to have been submitted at the trial. The first charges that the acts complained of were done *illegally and without color of title or right*, and that the "surface waters" were collected and thrown upon plaintiff's land by the *conduits or drains* laid under and across Page avenue; the second that said acts were done *under the authority of ordinances duly enacted for the establishment of said streets or avenues*, and that surface waters were collected and diverted along the north edge of the block, next north of plaintiff's land, eastwardly to western line of King's Highway, and then brought down southwardly to northwest corner of King's Highway and Page avenue, and then turned westward on north line of Page avenue, and then *by drains or conduits discharged on plaintiff's land*.

The record shows that the jury were instructed that "upon that state of facts" plaintiff was not entitled to recover. Without more, it may be somewhat difficult, if not impossible, to tell which state of facts was meant by the court; that *alleged* in the petition, or that made by the "agreed facts." In that view of the case, how are we to tell whether the court erred or not, unless we are *informed what* it has decided? By statute the court is forbidden to reverse a judgment, unless it believes that error was committed against appellant, materially affecting the merits of the action. R. S.

1879, sec. 3775. For these reasons, the court, perhaps, might well affirm the judgment. *Randle v. Railroad*, 65 Mo. 332, and cas. cit.

But waiving that question, let us proceed to the consideration of the whole case. In the first place, as before stated, I may remark that it appears from the foregoing statement, that plaintiff seeks to recover damages for injury done to his land by "surface water" collected and thrown upon it by the operations of the city government, in opening and constructing Page avenue under authority of ordinances duly enacted for that purpose. It will be noticed that it is not alleged or claimed that there was any negligence or want of care in executing the work in question; nor is it pretended that the city authorities, in constructing said conduits or drains, went beyond the limits of said avenue. I may further add that the brief summary of facts, agreed to be taken as proved, and upon which the cause was submitted for trial, fails to show the length of Page avenue, bounding plaintiff's land on the north or how many "conduits or drains" were laid under and across Page avenue; it speaks of them in the plural; but whether they are two, ten or more does not appear. Neither does it show the surface, or inclination of plaintiff's land, except that it is lower than the land north of it, and that it contains fifteen arpents more or less. Nor does it show whether there were upon it, and. if so, or what part of it, any natural water courses, ravines or gullies calculated to drain its surface waters flowing or thrown thereon; or that there were, or were not, any neighboring water courses, gullies or ravines near or contiguous to Page avenue, or upon plaintiff's said fifteen arpents of land, into which the super-abundant surface waters could, or might have been, conducted and carried off, without unnecessary injury to plaintiff or neighboring proprietors.

The record before us, in these particulars and perhaps others, is faulty and I think too defective for such

intelligent comprehension of the surroundings as is desirable, in considering and passing upon the difficult and vexed questions involved in cases of this sort. It is to be observed, also, that no complaint or question is made or arises in this case as to changing, lowering or elevating the grade of said Page avenue. Plaintiff's counsel in his brief in this court, disclaims anything of this sort, and as I understand him, rests his case *solely* upon the alleged wrongful laying and constructing said "conduits and drains" *across and under said Page avenue*, as charged in the petition, which he alleges is no part of said avenue, or necessary to it, but laid, as he alleges in his brief, to relieve the northern owner, at the expense of plaintiff. This thought runs through, and seems to be the burden of his entire brief.

Indeed, it is proper here to add, in the outset, that this suit was brought and tried in the lower court, as we understand, upon the theory of the law, as then understood and held in the case of *McCormick v. Railroad*, 70 Mo. 359, and that of *Shane v. Railroad*, 71 Mo. 237, and without any mention or reference to section 21, article 2, of the constitution of 1875, or the adjudications thereunder ; and what is here said, therefore, is not intended to affect, or be construed to affect that section, or any proper case affecting the flow and diversion of surface water made and tried thereunder, and with reference thereto. I deem it sufficient at present to consider and dispose of the case actually made and tried in the court below as shown by the record. It may also be proper to further add, that the *McCormick* and *Shane cases* in 70 and 71 Mo., above referred to, were both decided at the October term, 1879 ; and that this suit was, thereafter, brought in September, 1880, tried in September, 1884, and the briefs herein were filed in March, 1887. Also that all the adjudications, touching section 21 of article 2 of the constitution

of 1875, above referred to, as I understand, were rendered *subsequent* to the institution and trial of this cause in the court below.

It thus appears that the only question now before us, upon the meagre facts thus presented, is the *law* governing the flow and change of "surface water," as held and recognized in this state when applied as in the case at bar, to the acts of "municipal corporations," done under authority of ordinances duly enacted for the establishment and construction of the street or avenue in question. This question has frequently been before this court, and has received a uniform answer, except as hereinafter noticed. One of the earlier, and perhaps the leading and best considered cases, is that of *City of St. Louis v. Gurno*, 12 Mo. 415. In disposing of this case, NAPTON, J., speaking for the court, uses this language: "The only question presented by this record, is whether the city of St. Louis is liable to an action for damages consequential upon the grading and paving of a street, directed by the city authorities in pursuance of an ordinance authorized by the city charter. The declaration in this case charged that the work was done so negligently that the water, which before the improvement of the street, passed off by a natural channel, was thrown upon plaintiff's premises, and overflowed his cellar, and otherwise greatly impaired the value of his building; but upon the trial, the court instructed the jury that the corporation was liable for the injury complained of, whether the grading of the street, and the culvert constructed to carry off the waters, were properly made or not. So that the naked question is presented, whether the corporation is answerable in a civil action for consequential injuries of this character, however skilfully her agents may have executed the powers intrusted to them."

Continuing on top page 272, this further language is used: "Our impression is that such actions as the

present cannot be maintained. The distinction taken by the counsel, in the argument of this case, between the acts of municipal corporations in the discharge of such legislative functions, as have been delegated to them by the state, and those acts which are done by mere private corporations, or by municipal corporations in the prosecution of a mere private enterprise, we take it to be a sound one. When a municipal corporation engages in an undertaking, having no reference to her municipal duties, or the interest of the public at large, but merely for her private emolument or convenience, she is then on the same foot, with any individual, or private corporation, and is unquestionably answerable for her acts, precisely to the same extent, that an individual would be. This distinction has been recognized by the adjudged cases to which we shall hereafter advert. At present we shall only observe that the act complained of, in this case, was clearly one of those done in pursuance of a power vested by the charter in the city of St. Louis for public purposes." Citing among others: *Wilson v. Mayor*, 1 Denio, 597; *Green v. Borough of Reading*, 9 Watts [Pa.] 382; *Mayor v. Randolph*, 4 Watts & Serg. 516; *Calender v. Marsh*, 1 Pick. 418.

Continuing on top page 275, this further language is used: "That such a distinction had been taken in all the English cases seems to be conceded. * * * The decisions in New York, Pennsylvania and Massachusetts, we have seen, are in conformity to this principle and the supreme court of the United States in *Gosly v. Corporation of Georgetown*, 6 Wheat. 593, indirectly sanctions the same principle. The same point was determined in *Sutton v. Clark*, 6 Taunt. 42 and *Harman v. Tappenden*, 1 East. 555."

The principles settled in *Gurno v. City of St. Louis*, *supra*, are approved in the following subsequent cases: *Taylor v. City of St. Louis*, 14 Mo. 20, at page 23; *Lambar v. City of St. Louis*, 15 Mo. 612; *Hoffman v.*

*City of St. Louis*, 15 Mo. 653; *Imler v. City of Springfield*, 55 Mo. 119. *Jones v. Hanovan*, 55 Mo. 462, recognizes the same rule as to the flow of surface water. In *Foster v. City of St. Louis*, 71 Mo. 157, it is expressly held (see head note), that "a city is liable in damages for the flooding of private property, caused by the construction of a street in pursuance of a plan prescribed by ordinance, *only* when the injury is the result of *negligent execution of* the plan, not when it is the result of a defect in the plan itself."

Angell on Water Courses [7 Ed.] section 108*l*, page 135, treating of same subject, uses this language: "Town officers in repairing a highway may construct drains and culverts within the limits of a highway; and if the surface water, after flowing in them for some distance, turns upon the land of an adjoining proprietor, no action at law lies for the damage thereby occasioned. Towns are bound to make their highways safe and convenient for travellers; and they and their officers are protected in doing it, so long as they act within the scope of their authority, and execute the work in a reasonably proper and skilful manner, although their operations cause the surface water to flow upon the adjacent proprietors in large quantities to their injury. Their rights are commensurate with their duties. * * * One of these rights is that of keeping the travelled path free from surface water, in such manner as the officers of the town think proper." The same author in section 108*m*, page 136, uses this further language: "So, on the other hand, the owner of land which adjoins a highway may lawfully do any acts upon his own lands to prevent surface water from coming thereon from the highway; and may stop up the mouth of a culvert built by the selectmen across the highway, for the purpose of conducting such surface water upon his land, provided he can do so without going beyond the limits of his own land."

So, in *McCormick v. Railroad*, 57 Mo. on page, 437, this court, VORIES, J., speaking for the court, uses this language: "There is no doubt but that the authorities of towns and cities, whose duty it is to keep the streets and public ways in good repair for the use of the public, may repair the same in a reasonable manner, without incurring any liability to adjoining proprietors, even though said improvements may cause a change in the natural flow of surface water to their injury. * * * The general rule, however, is, that either municipal corporations or private persons may so occupy and improve their land, and use it for such purposes as they may see fit either by grading or filling up low places, or erecting buildings thereon, or by making any other improvements thereon to make it fit for cultivation or other profitable or desirable enjoyment; and it makes no difference that the effect of such improvement is to change the flow of the surface water, accumulating or falling on the surrounding country, so as to either increase or diminish the quantity of such water, which had previously flowed upon the land of the adjoining proprietors to their inconvenience or injury. (Angell on Water Courses, p. 122, sec. 108 and following, and cases there cited; *Goodale v. Tuttle*, 29 N. Y. 459; *Waffle v. Railroad*, 58 Barb. 413; *Turner v. Inhabitants*, 13 Allen, 219; *Imler v. City of Springfield*, 55 Mo. 119, and cases there cited.) * * * He must improve and use his own lands in a reasonable way, and in so doing, he may turn the course of and protect his own land from the surface water flowing thereon; and he will not be liable for any incidental injury occasioned to others by the changed course in which the water may naturally flow, and for its increase upon the land of others. Each proprietor, in such case, is left to protect his own lands against the common enemy of all."

It is proper here to add, that this case uses other language, of which we shall speak hereafter, that has

been thought and construed to assert a contrary doc-trine; but of this further on. Numerous other author-ities recognize and assert the same general doctrine. See *Clark v. Railroad*, 36 Mo. 224; *Hosher v. Rail-road*, 60 Mo. 329; *Munkers v. Railroad*, 60 Mo. 334; *Abbot v. Railroad*, 83 Mo. 271, 280; *Hoester v. Hemsath*, 16 Mo. App. 485.

In the case of *Gannon v. Hargadon*, 10 Allen, 109, Chief Justice BIGELOW, speaking for the court, uses this language: "The right of an owner of land to occupy and improve it in such manner and for such purpose as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation, in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into or over the same in greater quantities, or in other directions than they were accustomed to flow. * * * A party may improve any portion of his land, although he may thereby cause the surface water flowing thereon, whencesoever it may come, to pass off in a different direction and in larger quantities than previously. If such an act causes damages to an adjacent land, it is *damnum absque injuria.*" See, also, Ang. on Water Courses, section 108*a*, and on pp. 119, 120.

In *Benson v. Railroad*, 78 Mo. 512, the court, speaking through PHILIPS, Com., uses this language: "The general rule, it is true, applicable to the enjoy-ment of real estate is expressed in the maxim, *cujus est solum, ejus est usque ad coelum.* He has ordinarily the right to use and improve his real estate by protect-ing it against water flowing over its surface. In doing so, the dominant proprietor may turn it from his land

onto the servient or lower land, without liability to damages. Ang. Wat. Cour., sec. 120. Mere surface water, that which does not run in any defined course or confined channel, is regarded as a common enemy against which any land-owner affected by it may fight. *Hoyt v. City of Hudson*, 27 Wis. 656; *Hosher v. Railroad*, 60 Mo. 333. But in doing so regard must be had to another recognized maxim of law: *sic utere tuo ut alium non laedas.*"

To the same effect is the language of Denio, C. J., in the case of *Goodale v. Tuttle*, 29 N. Y. 459, where he said: "And in respect to the running off of surface water caused by rain or snow, I know of no principle which will prevent the owner of land from filling up the wet and marshy places on his own soil for its amelioration, and his own advantage, because his neighbor's land is so situated as to be incommoded by it. Such a doctrine would militate against the well-settled rule, that the owner of land has full dominion over the whole space, above and below the surface." See, also, Angell on Wat. Cour., sec. 108*a* on page 123.

In the case of *Stewart v. City of Clinton*, 79 Mo. 612, the court uses this language: "Surface water, the books say, is a common enemy against which any land proprietor has a right to fight. * * * But as to mere surface water running down a street, as in this case, in no confined channel, the dominant proprietor may divert it and turn it upon the servient land without liability. * * * This injury he could easily have prevented by closing up his pipes. * * * For if a plaintiff could have prevented the injury, 'at a trifling expense, and by reasonable exertion,' his complaint is clearly *damnum absque injuria*, no matter who was originally in fault." In the case of *Hoyt v. City of Hudson*, 27 Wis. 656, the general doctrine of the "common law" in reference to "surface water" is clearly stated and approved. To the same effect, also, is the opinion of the St. Louis court of appeals, in the

case of *Hoester v. Hemsath*, 16 Mo. App. 485, 486, where the doctrine of the common law, as to surface water, is clearly and forcibly stated and approved.

The adjudications and authorities, hereinbefore cited, are, I think, sufficient to show both what the "common-law" rule is, in reference to "surface water," its flow and diversion, as well as how it has been applied, recognized and approved, both in this state, as well as others, where the same rule prevails.

As is well known, there is another rule applicable to this subject known as the "civil-law rule," which prevails in many of the states. These two rules, as is well known, are largely *antagonistic* to each other, and have occasioned not only much conflict and some confusion in the rulings of the several states, but also occasioned vacillation in the rulings of the same state. The difference between these two rules is well expressed in the case of *Hoyt v. City of Hudson*, 27 Wis. 659, when it is thus stated: "The doctrine of the civil law is, that the owner of the upper or dominant estate has a natural easement or servitude in the lower or servient one, to discharge all waters falling or accumulating upon his land, which is higher, upon or over the land of the servient owner, as in a state of nature ; and that such natural flow or passage of the water cannot be interrupted or prevented by the servient owner to the detriment or injury of the dominant or any other proprietor." (This rule prevails in Pennsylvania, Iowa, Illinois, Ohio and perhaps other states.) "The doctrine of the common law is, that there exists no such natural easement or servitude in favor of the owner of the superior or higher ground or fields, as to mere surface water, or such as falls or accumulates by rain or the melting of snow ; and that the proprietor of the inferior or lower tenement or estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and in

so doing may turn the, same back upon or off onto or over the lands of other proprietors without liability ensuing from such obstruction or diversion. This is the rule in England, and in Massachusetts, New York, Vermont, New Jersey, Connecticut, New Hampshire and Wisconsin and perhaps others. *Hoyt v. City of Hudson, supra.*

It may be said, that the views here last expressed, and herein approved, are not in exact harmony with those of Dillon's Municipal Corporations, sections 1042, 1051 ; but it must be remembered that Judge DILLON, in his able work on municipal corporations, in said sections, but expresses the views held and recognized in the state of Iowa and other states, adopting the rule of the civil law, on this question. Judge DILLON himself, as I understand, while on the bench of the state of Iowa in the case of *Livingston v. McDonald*, 21 Iowa, 160, 164, 168 and following, entertained and expressed the same views embodied in sections 1042 and 1051, *supra*, of his work on municipal corporations. So of Washburn on Easements and Servitudes, sec. 6, p. 353 and other writers holding the same views.

I understand the theory of plaintiff's *petition* and his argument in this court to be, "that the laying of said conduits or drains, under and across Page avenue, is, *per se*, actionable regardless of negligence or want of care in their construction." So it would be if tried or governed by the rule of the civil law. But, as was said in *Abbott v. Railroad*, 83 Mo. 285 : "The statute of this state, sec. 3117, p. 521, declares that the 'common law of England * * * shall be the rule of action' and decision in this state, any law, custom or usage to the contrary notwithstanding.' "

The plaintiff in drawing his petition (I apprehend) failed to distinguish the difference between the civil and common law, as above indicated on this question. In his brief, he cites and relies on the case of *McCormick*

*v. Railroad*, 70 Mo. 359. That case is the same one reported in 57 Mo. 433, hereinbefore referred to. The "other language" there referred *to*, as having been thought and construed to assert a doctrine contrary to that there copied in this opinion, is found on page 438 and is as follows: " The owner of land could not collect all the water falling upon his buildings during heavy rains, and by means of pipes or gutters precipitate the water, thus collected, directly upon the land of the adjoining proprietor; *nor could he collect the surface water from the surrounding country into a large reservoir or pond upon the line dividing his land and the land of an adjoining proprietor, and turn it loose in large quantities on the land of the adjoining proprietor, so as to destroy the value of the land and crops of the adjoining proprietor.*"

In that portion of the above paragraph, which I have here *italicised* and put in quotation marks, there may be, perhaps, an inadvertent and misleading *blending* of the rule of the civil law with that of the common law, touching the flow of surface water. That part of the paragraph thus *italicised*, as I understand it, is, I think, *misleading* and liable to the construction that, the acts, there specified, are actionable *per se*, and the party doing them is liable in damages, regardless of the question of negligence or want of due care. That, unquestionably is the rule of the civil law. But the common law, by statute as well as by a long line of adjudication in this state, as we have seen, is declared to " be the rule of action and decision in this state, any law, custom or usage to the contrary notwithstanding."

Whether in so doing, the company in the *McCormick case*, 57 Mo., *supra*, was liable in damages under the common-law rule, I venture to say (as was held and declared in *Abbott v. Railroad*, 83 Mo. 280, 281), depends upon whether the company in so doing (having competent authority so to do) exercised reasonable care and

skill, with reference to the safety and security of its road-bed and track, and to the traveling public at the same time ; that it was equally bound to see that no unnecessary injury was done to adjoining proprietors by the obstruction and deflection of surface water, incident to such careful and skilful construction of the same. That this duty rests with equal force upon the defendant, in both respects, and, whether there has been a failure to discharge that duty in a given case, in any material particular, either by failure to provide sufficient water-way ( or in the *McCormick* case for the construction of improper water-ways or channels ) when necessary and proper, or by failure to exercise reasonable care and skill in any other particular, is a question of fact to be determined by the jury, under proper instructions from the court with reference to the particular facts in the case.    If that be so, the acts specified in the passage from the McCormick opinion, 57 Mo. 438, hereinbefore quoted and *italicised*, would not as there held, be actionable *per se*, regardless of care and skill, or the want thereof in so doing.

So, in the case at bar, the city, having authority to construct said conduits or drains was, in my opinion, bound by a like duty, subject to like obligations, and exempt from like responsibility and liability, for like injuries and damages as specified in the opinion in the *Abbott* case, *supra*, and it follows, in my opinion, that the acts charged in the case at bar are not *per se* actionable and that the court was right in so ruling.    But the doctrine from the *McCormick case*, 57 Mo. 438, thus *italicised*, whether right or wrong in principle, or whether of civil or common-law origin, is, in any event, outside of the case made by the pleadings, evidence and instructions in that cause, 57 Mo., *supra*, as will be seen by examination of that case, and as hereafter shown and therefore mere " *obiter dictum* " and consequently without any binding force, as authority.

That the above paragraph, so *italicised*, is not only *misleading*, and in fact, a part of the *"civil law"* and borrowed therefrom, it is only necessary to refer to the opinion in 70 Mo., *supra*, where the same case was here a second time for review, and where the learned judge, undertook to construe and did construe, what had been said and decided when the case was first here in 57 Mo., *supra*. In the outset of the opinion in 70 Mo., *supra*, the court uses this .language : "When this cause was here in 1874 ( 57 Mo. 433 ) the court clearly indicated the ground upon which the plaintiff's right to a recovery must be based. The opinion, in the case adopted the views of LOWRIE, J., in *Kauffman v. Griesemer*, 26 Pa. St. 415." The opinion then set out at considerable length the views and language of Judge LOWRIE, which on examination is found to embody and approve the civil-law doctrine and which the learned judge declares was in truth drawn from the Roman law, and was the basis of the decision of this court when the case was here before. If that were so, the *reversal* of the 70 Mo., *supra*, would to that extent operate as a reversal of the ground upon which that recovery was justified and upheld.

The plaintiff in his brief cites and relies on the case of *McCormick v. Railroad*, 70 Mo. 359, which is expressly overruled by the case of *Abbott v. Railroad*, *supra*. Indeed the case of *McCormick* in 70 Mo., *supra*, is the same case reported in 57 Mo. page 433. When first here in 57 Mo., *supra*, it will be found, when carefully examined to be about this : The plaintiff, in his *petition*, claims that the defendant had so constructed its road-bed, that the embankments, made therefor, had collected a large body of surface and overflowed water on the east side of its road-bed, where the same adjoined the land of plaintiff ; and that, after said water had been so collected in a large body or pond, the defendant *negligently* and *maliciously cut an artificial channel*,

from said body of water, through the embankment of said road-bed, and drained all of said large body of water onto plaintiff's land, by which plaintiff was injured, etc.    The bill of exceptions does not set out the evidence but simply states that plaintiff introduced evidence tending to prove the material allegations in the petition, and that the defendant offered evidence tending to prove the allegations set up in the second defense to the petition.    The second defense here alluded to (after mentioning the condemnation of the right of way for the road-bed, and the payment of the damages assessed therefor) proceeds to state, "that the damages, so assessed and paid, included whatever damages could or might be done to plaintiff's land by the building and construction of said railroad, and all embankments thereon, and all drains and channels under said embankments necessary to the proper construction and maintenance of said railroad, and that the channel mentioned in said petition was necessary to the use and maintenance of said road."

This evidence offered by the defendant was objected to by plaintiff, as being immaterial and going to prove no defense to plaintiff's action.  This objection was overruled and plaintiff excepted.  The plaintiff at the close of the evidence asked the court to give (among others) the following instruction : " The court instructs the jury that if they believe from the evidence that defendant collected a large body of surface water on the east side of its railroad, by the embankment of said road as charged in plaintiff's petition, and that sometime in June of 1871, or about that time, charged in plaintiff's petition, said defendant by *an artificial channel*, through said embankment, *negligently and carelessly* drained said body of water onto plaintiff's land, then plaintiff is entitled to recover what damage he has suffered, as shown by the evidence."   All of which the court refused and plaintiff excepted.   The plaintiff then

suffered a non-suit with leave to move to set the same aside, which was afterwards overruled by the court and plaintiff again excepted and brought the case to the supreme court by writ of error.

Upon this state of the case, the court held that, "the only question presented for the consideration of this court, by the record in the case, grew out of the action of the circuit court *in giving and refusing instructions*, asked by the respective parties; for if the *instructions* given on the part of defendant were properly given, *evidence* objected to by plaintiff was properly *received.*" The instructions given for defendant, I have not deemed it necessary here to set out, as the case was made to turn upon the *refusal* of *plaintiff's* said instruction, above set out. The court then remarked, that "the first instruction asked by plaintiff told the jury in effect, that if the plaintiff did the act charged in the petition, *in the manner therein charged*, plaintiff had a *right to recover.*" The court then adds: "We think this instruction ought to have been given." And its refusal was held to be error, for which the judgment was reversed and the cause remanded for a new trial, etc.

In the passages last above quoted, from 57 Mo., p. 438, there is, I think, an unfortunate *blending* of the civil and common-law rules, pertaining to the subject that has lead to some misapprehension as to what the learned judge, delivering that opinion, really meant thereby. The learned judge who decided the case when it came the second time for review, in 70 Mo., *supra*, thus interprets its meaning and origin, by the use of the following language: "When this case was here in 1874 (57 Mo. 433) the court clearly indicated the ground upon which the plaintiff's right of recovery must be based. The opinion in this case adopted the views of LOWRIE, J., in *Kauffman v. Griesemer*, 26 Pa. St. 415" (which are then set out at considerable length); and which, when examined, are found to be the "civil-law

rules " on that subject, and so declared by the learned judge in his opinion, when the case was here in 70 Mo., *supra*. If that was a correct interpretation of the first opinion, in 57 Mo., *supra*, in which we do not concur, except as herein stated, then it was overruled by case of *Abbott v. Railroad*, in 83 Mo., *supra*. But we are of opinion, that the case in 57 Mo., *supra*, was not designed to adopt, or support, the "civil-law rule" as to the "flow of surface water ; " while one passage only therein, if taken by itself, is, I think, liable to that construction, and has led, to some misunderstanding as to what was really meant. That passage, here referred to, is this : " Nor could he ( the owner of the land ) collect the surface water from the surrounding country into a large reservoir or pond upon the line dividing his land and the land of an adjoining proprietor, and turn it loose in large quantities on the land of the adjoining proprietor, so as to destroy the value of the land and crop of the adjoining proprietor. "

This passage is, I think, borrowed from the civil law and inadvertently, perhaps, deemed a part of the common law. To this extent only, in my opinion, is the interpretation placed upon it, by 70 Mo., *supra*, correct. All the balance of what is stated on the subject in 57 Mo., *supra*, is clearly common law and not civil law. The passage above quoted from 57 Mo., *supra*, p. 438, as I understand it, declares that the acts there charged are actionable *per se*, regardless of negligence or the want of ordinary care. If tried by the rule of the civil law, that is true; but if tried by the rule of the common law, its actionability in my opinion depends upon whether, under all the circumstances, the party thus collecting and discharging the waters in question, in so doing had due regard to the safety and security of the road-bed and the right of the adjoining proprietor, so as to inflict no unnecessary injury thereby. The rule being, as I understand, that when the party *is authorized by law* to do the act in question, he is only liable

Rychlicki v. City of St. Louis.

for the want of due care in the execution of the work, and if in so doing, he occasions no *unnecessary* injury to adjoining proprietors, he is not responsible in damage therefor. This is the rule distinctly announced and approved in the case of *Abbott v. Railroad, supra,* and authorities there cited. And as I understand, this is the purport of the common-law rule, as found and approved in the numerous adjudications and authorities hereinbefore cited. The party authorized to do the work must do so in a careful manner and inflict no *unnecessary* injury to others.

So, in laying the conduits and drains under and across Page Avenue, complained of in the case at bar, it is, we think, impossible to declare, *as matter of law,* that the city was liable in damages, without a due consideration of all the facts and circumstances necessary to be shown and considered with reference thereto, none of which, in my opinion, are *sufficiently stated and charged* in the petition. I am, therefore, of opinion that the trial court committed no error in instructing the jury, that the plaintiff was not entitled to recover.

In conclusion I may add, that I greatly fear, if I correctly understand the scope and bearing of the majority opinion, that it will go far to shake all confidence in, if not absolutely unsettle, an important question of great public interest, that had been supposed to have been permantly set at rest in this state by the later adjudications of our courts. *Hoester v. Hemsath,* 16 Mo. App. 486 and cas. cit ; *Abbott v. Railroad,* 83 Mo. 271, 280, 281 and cas. cit.

If I mistake not, it will greatly cripple and embarrass the enterprise and operations of all municipal and other corporations, as well as that larger interest of agricultural development everywhere on the increase, and of the greatest interest to the whole country. To illustrate : A railroad embankment is constructed across low lands, between neighboring elevations in the

country, through which the road runs. The necessary consequence is, that a body of water, large or small, from rains and melting snows, is collected and backed upon the higher lands to their injury. To avoid which and preserve their road-bed, the company constructs one or more culverts through the embankment for the passage of the waters to the low-land on the opposite side of the road, to its injury; or to prevent that, the company digs a ditch along the side of the road-bed on the down grade, and carries the waters off in that direction; these waters so collected and diverted must necessarily be discharged on the first low land reached in their progress to its damage; unless, perchance, a neighboring stream can be found to receive and convey them harmlessly away. This dilemma is inevitable and there is no escape from it if the doctrine contended for by plaintiff and sustained by the majority opinion prevails.

To illustrate again: The same impracticable and unsurmountable difficulties must necessarily obstruct and render futile any system of drainage among adjoining proprietors in all agricultural and farming districts in the whole country, if the principle underlying the majority opinion prevails. So too, of all cities, towns and villages. Such a rule is manifestly impracticable, and surely cannot be the law. The true rule is that of the common law as herein explained, and heretofore unanimously approved in *Abbott v. Railroad, supra,* and also in *Hoester v. Hemsath, supra.*

We may also further add, that the authority of the case of *Pettigrew v. Evansville,* 25 Wis. 223, cited and relied on by the majority opinion herein, as I understand, has been expressly greatly modified if not entirely and virtually overruled by a subsequent opinion of the same court in the case of *Hoyt v. City of Hudson,* 27 Wis. 656, 658, 659, 660 and following. This latter case repudiates the doctrine of the civil law and adopts and approves that of the common law.